**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEC MARSH,<br>　　　　　　　*Plaintiff-Appellant*,<br><br>　　　　　v.<br><br>J. ALEXANDER'S LLC,<br>　　　　　　　*Defendant-Appellee.* | No. 15-15791<br><br>D.C. No.<br>2:14-cv-01038-SMM |
| CRYSTAL SHEEHAN,<br>　　　　　　　*Plaintiff-Appellant*,<br><br>　　　　　v.<br><br>ROMULUS INCORPORATED,<br>DBA International House of<br>Pancakes,<br>　　　　　　　*Defendant-Appellee.* | No. 15-15794<br><br>D.C. No.<br>2:14-cv-00464-SMM |

| | |
|---|---|
| SILVIA ALARCON,<br>            *Plaintiff-Appellant*,<br><br>            v.<br><br>ARRIBA ENTERPRISES<br>INCORPORATED, DBA Arriba<br>Mexican Grill,<br>            *Defendant-Appellee.* | No. 15-16561<br><br>D.C. No.<br>2:14-cv-00465-SMM |

| | |
|---|---|
| SAROSHA HOGAN; NICHOLAS<br>JACKSON; SKYLAR VAZQUEZ;<br>THOMAS ARMSTRONG; PHILIP<br>TODD; MARIA HURKMANS,<br>            *Plaintiffs-Appellants*,<br><br>            v.<br><br>AMERICAN MULTI-CINEMA,<br>INC., DBA AMC Theatres<br>Esplanade 14,<br>            *Defendant-Appellee.* | No. 15-16659<br><br>D.C. Nos.<br>2:14-cv-00051-SMM<br>2:14-cv-00766-SMM<br>2:14-cv-00768-SMM<br>2:14-cv-00769-SMM<br>2:14-cv-01243-SMM<br>2:14-cv-01244-SMM |

| | |
|---|---|
| NATHAN LLANOS, an individual,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>P.F. CHANG'S CHINA BISTRO, INC.,<br>*Defendant-Appellee.* | No. 16-15003<br><br>D.C. No.<br>2:14-cv-00261-SMM |
| KRISTEN ROMERO, an individual,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>P.F. CHANG'S CHINA BISTRO, INC.,<br>*Defendant-Appellee.* | No. 16-15004<br><br>D.C. No.<br>2:14-cv-00262-SMM |
| ANDREW FIELDS, an individual,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>P.F. CHANG'S CHINA BISTRO, INC.,<br>*Defendant-Appellee.* | No. 16-15005<br><br>D.C. No.<br>2:14-cv-00263-SMM |

4                    MARSH V. J. ALEXANDER'S

ALTO WILLIAMS,                          No. 16-15118
            *Plaintiff-Appellant*,
                                        D.C. No.
            v.                          2:14-cv-01467-SMM

AMERICAN BLUE RIBBON
HOLDINGS, LLC,
            *Defendant-Appellee.*

STEPHANIE R. FAUSNACHT,                 No. 16-16033
            *Plaintiff-Appellant*,
                                        D.C. No.
            v.                          2:15-cv-01561-SMM

LION'S DEN MANAGEMENT
LLC, DBA Denny's,                       OPINION
            *Defendant-Appellee.*

Appeals from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Argued and Submitted En Banc March 20, 2018
San Francisco, California

Filed September 18, 2018

Before:  Sidney R. Thomas, Chief Judge, and Susan P.
Graber, M. Margaret McKeown, Kim McLane Wardlaw,
William A. Fletcher, Richard A. Paez, Johnnie B.
Rawlinson, Consuelo M. Callahan, Sandra S. Ikuta,
Morgan Christen and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Paez;
Partial Concurrence and Partial Dissent by Judge Graber;
Dissent by Judge Ikuta

## SUMMARY[*]

## Labor Law

The en banc court reversed district courts' dismissals of actions under the Fair Labor Standards Act concerning tip credits toward servers' and bartenders' wages.

The FLSA permits employers to take a tip credit for employees in tipped occupations. Plaintiffs alleged that their employers abused the tip credit provision by paying them a reduced tip credit wage and treating them as tipped employees when they were engaged in either (1) non-tipped tasks unrelated to serving and bartending, such as cleaning toilets; or (2) non-incidental tasks related to serving or bartending, such as hours spent cleaning and maintaining soft drink dispensers in excess of 20% of the workweek.

The en banc court held that the Department of Labor foreclosed an employer's ability to engage in this practice by promulgating a dual jobs regulation, 29 C.F.R. § 531.56(e), and subsequently interpreting that regulation in its 1988 Field Operations Handbook, known as the "Guidance." The en banc court concluded that the regulation was entitled to *Chevron* deference. Agreeing with the Eighth Circuit, the en banc court held that the agency's interpretation in the Guidance was entitled to *Auer* deference because the regulation was ambiguous and the Guidance's interpretation was both reasonable and consistent with the regulation. The en banc court concluded that the plaintiffs had stated a claim under the FLSA for minimum wage violations. The en banc

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court reversed the district courts' judgments and remanded for further proceedings.

Concurring in part and dissenting in part, Judge Graber wrote that plaintiffs stated a claim that their employers failed to pay them appropriate wages for non-tipped work unrelated to their jobs. Judge Graber wrote that she would affirm in part on the ground that plaintiffs failed to state a claim regarding wages for non-tipped work related to their jobs.

Dissenting, Judge Ikuta, joined by Judge Callahan, wrote that deference to the agency was improper because the agency's purported interpretation effectively eliminated an employer's statutory right to take a tip credit. Judge Ikuta wrote that this legislative act was accomplished without compliance with the Administrative Procedure Act, resulting in an unfair and unexpected imposition of liability on employers.

## COUNSEL

Jahan C. Sagafi (argued), Outten & Golden LLP, San Francisco, California; Clifford P. Bendau II, The Bendau Law Firm, Phoenix, Arizona; Jamie G. Sypulski, Law Office of Jamie Golden Sypulski, Chicago, Illinois; Douglas M. Werman, Werman Salas P.C., Chicago, Illinois; for Plaintiffs-Appellants.

Paul DeCamp (argued), Jackson Lewis P.C., Reston, Virginia; Stephanie M. Cerasano, Jackson Lewis P.C., Phoenix, Arizona; for Defendant-Appellee P.F. Chang's China Bistro.

David A. Selden, Julie A. Pace, and Heidi Nunn-Gilman, The Cavanagh Law Firm, Phoenix, Arizona, for Defendant-Appellee Romulus, Inc.

Robert W. Horton and Mary Leigh Pirtle, Bass Berry & Sims PLC, Nashville, Tennessee; Eric M. Fraser, Osborn Maledon P.A., Phoenix, Arizona; for Defendant-Appellee J. Alexander's LLC.

Karen L. Karr, K. Leone Karr Law Office, Scottsdale, Arizona, for Defendants-Appellees Arriba Enterprises Inc. and Lion's Den Management LLC.

Tracy A. Miller and Alexandra J. Gill, Ogletree Deakins Nash Smoak & Stewart P.C., Phoenix, Arizona, for Defendant-Appellant American Multi-Cinema Inc.

Caroline Larsen and Alexandra J. Gill, Ogletree Deakins Nash Smoak & Stewart P.C., Phoenix, Arizona, for Defendant-Appellee American Blue Ribbon Holdings LLC.

Sarah K. Marcus (argued), Senior Attorney; Paul L. Frieden, Counsel for Appellate Litigation; Jennifer S. Brand, Associate Solicitor; M. Patricia Smith, Solicitor of Labor; Office of the Solicitor, United States Department of Labor, Washington, D.C., for Amicus Curiae Secretary of Labor.

## OPINION

PAEZ, Circuit Judge:

Congress enacted the Fair Labor Standards Act ("FLSA") in 1938 in response to a national concern that the price of American development was the exploitation of an entire class of low-income workers.  President Roosevelt, who pushed for fair labor legislation, famously declared: "The test of our progress is not whether we add more to the abundance of those who have much; it is whether we provide enough for those who have too little."  S. Rep. No. 93-690, at 4 (1974).  The FLSA thus safeguards workers from poverty by preventing employers from paying substandard wages in order to compete with one another on the market. *See id.*  And yet, the plaintiffs in these consolidated cases allege that the defendant employers have done exactly that.

The FLSA permits employers to take a tip credit for employees in tipped occupations.  *See* 29 U.S.C. § 203(m). The tip credit offsets an employer's obligation to pay the hourly minimum wage; employers may therefore pay as little as $2.13 per hour to tipped employees under federal law. 29 C.F.R. § 531.59.  If the employee's tip credit wage and tips do not meet minimum wage, however, the employer must make up the difference.  *See* 29 U.S.C. § 203(m).

Alec Marsh and thirteen other former servers and bartenders[1] allege that their employers abused the tip credit

---

[1] The thirteen other servers and bartenders are Crystal Sheehan (No. 15-15794); Silvia Alarcon (No. 15-16561); Sarosha Hogan, Nicholas Jackson, Skylar Vazquez, Thomas Armstrong, Philip Todd, and Maria Hurkmans (No. 15-16659); Nathan Llanos (No. 16-5003); Kristen Romero (No. 16-15004); Andrew Fields (No. 16-15005); Alto Williams (No. 16-15118); and Stephanie Fausnacht (No. 16-16033). In addition to

provision by paying them the reduced tip credit wage and treating them as tipped employees when they were engaged in either (1) non-tipped tasks unrelated to serving or bartending, such as cleaning toilets; or (2) non-incidental tasks related to serving or bartending, such as hours spent cleaning and maintaining soft drink dispensers in excess of 20% of the workweek. Using the tip credit in such a manner effectively makes tips—intended as gifts to servers for their service—payments to employers instead, who use these tips to minimize their obligations to pay employees the full minimum wage for time spent working in a non-tipped occupation.[2] Furthermore, by using servers as dishwashers,

---

J. Alexander's, the other defendants include the International House of Pancakes (No. 15-15794); Arriba Mexican Grill (No. 15-16561); AMC Theatres Esplanade 14 (No. 15-16659); P.F. Chang's China Bistro, Inc. (Nos. 16-15003/04/05); American Blue Ribbon Holdings, LLC (No. 16-15118); and Denny's (No. 16-16033). These cases have been consolidated on appeal. Because Marsh's suit is the lead case, we refer to the plaintiffs collectively as "Marsh." We refer to the defendants collectively as "Defendants."

[2] In the dissent's view, employers do not abuse tipped employees as long as the employees receive minimum wage. Dissent at 58 n.2. But, the DOL was entitled to conclude otherwise. Congress has gradually increased the minimum wage over the years to "eliminate[e] labor conditions detrimental to the maintenance of the *minimum* standard of living necessary for health, efficiency, and general well-being of workers." H.R. Rep. No. 89-1366, at 2 (1966) (emphasis added). The minimum wage is meant to be a floor, not a ceiling: it is the bare minimum necessary to secure "the very lowest standards" of living. *Id.* at 6. By crediting a server's tips towards their obligations to pay full minimum wage for time employees spend working in a non-tipped occupation, employers deprive servers the full value of their tips, which are the property of the employee, *see* 29 C.F.R. § 531.52, and make it significantly more difficult for the server to earn a living beyond minimum wage. The dissent's protestations to the contrary miss the forest for the trees: the issue is not whether tipped employees are entitled to the full minimum wage plus their tips, the issue is whether employers

bussers, janitors, and cooks, employers can allegedly eliminate or significantly reduce their need to hire full-time janitors and cooks, who—as non-tipped workers—are entitled to the full minimum hourly wage and therefore cost more to employ.

We conclude today that the Department of Labor ("DOL") foreclosed an employer's ability to engage in this practice by promulgating a dual jobs regulation in 1967, 29 C.F.R. § 531.56(e), and subsequently interpreting that regulation in its 1988 Field Operations Handbook. We agree with Marsh that both the regulation and the agency's interpretation are entitled to deference. Because Marsh has stated a claim under the FLSA for minimum wage violations, we reverse the district court's judgments and remand for further proceedings consistent with this opinion.

## I.

Alec Marsh worked as a server at J. Alexander's, a chain restaurant with at least one location in Phoenix, Arizona, from November 2012 to April 2013.[3]  Marsh typically worked around thirty-two hours per week, but spent almost half his time on tasks that did not produce tips, such as cutting and stocking fruit, cleaning the soft drink dispenser

---

may use an employee's tips to cover their own obligation to pay full minimum wage for time an employee spends in a non-tipped occupation.

[3] Marsh filed a motion in the district court for leave to file a first amended complaint, which the court denied on grounds of futility. The proposed amended complaint provided additional details related to Marsh's weekly tasks not included in the original complaint. Where necessary for the sake of clarity, we have incorporated details from the proposed amended complaint in our recitation of the facts. Because the rest of the consolidated cases on appeal share a similar factual background, we do not separately recount them here.

and nozzles, replacing soft drink syrups, stocking ice, taking out the trash, scrubbing the walls, and cleaning the restrooms.  These tasks often took place out of customer view, either before the restaurant had opened or after it had closed.  For example, Marsh was required to stock ice, brew tea, and cut and stock fruit every opening shift and to wipe down tables and collect and take out the trash every closing shift.  In return for his labor, J. Alexander's paid Marsh an hourly tip credit wage of $4.65 per hour in 2012 and $4.80 per hour in 2013 pursuant to Arizona law.  *See* Ariz. Rev. Stat. § 23-363 (2007).

Marsh filed suit, alleging that J. Alexander's use of the tip credit wage violated the FLSA's minimum wage requirements.  *See* 29 U.S.C. § 206(a).  Marsh's complaint alleged that, pursuant to the DOL's dual jobs regulation, he was a dual job employee working in multiple occupations— one tipped, and the others not—because J. Alexander's required him to complete tasks unrelated to his tipped occupation, such as cleaning the restrooms, and to spend well over 20% of his time per week on tasks related to his occupation that did not in and of themselves produce tips, such as brewing coffee.  Marsh alleged that although J. Alexander's was entitled to pay him a tip credit wage for the time he spent working in his tipped occupation as a server, it was not entitled to continue paying him the tip credit wage for time spent working in an untipped occupation.

Under this theory, J. Alexander's violated the FLSA's minimum wage requirements when it failed to pay Marsh the full hourly minimum wage for time spent working in an untipped occupation.  Marsh requested compensation equal to the difference between the wages he was paid and Arizona's minimum wage.

A few months after filing his complaint, Marsh moved for leave to file a first amended complaint. The proposed first amended complaint detailed how much time Marsh spent completing each untipped task in a given workweek and estimated his compensation for time engaged in a non-tipped second occupation at $3.00 per hour. As the original complaint, the amended complaint alleged two violations of the FLSA and the dual jobs regulation: the first for failing to pay Marsh the full minimum wage for time spent in excess of 20% of his workweek on non-tipped, related duties; and the second for failing to pay Marsh full minimum wage for time spent on unrelated duties.

J. Alexander's moved to dismiss the original complaint. The district court granted the motion, denied Marsh's motion to file an amended complaint, and dismissed Marsh's suit with prejudice. The court concluded that Marsh failed to state an FLSA claim as a matter of law for three reasons: (1) Marsh could not state a minimum wage violation pursuant to *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960), as long as he was paid minimum wage per workweek, irrespective of how much he was actually paid per hour; (2) the dual jobs regulation, 29 C.F.R. § 531.56(e), is unambiguous and does not recognize that servers like Marsh work in different occupations when the non-tipped tasks are related to the tipped occupation; and (3) even if the dual jobs regulation *is* ambiguous, the DOL's interpretation of the regulation in its 1988 Field Operations Handbook (the "Guidance")—which treats the performance of related duties in excess of 20% of an employee's workweek as a different occupation—is not entitled to *Auer* deference.

Marsh timely appealed. A divided panel of this court agreed with the district court that the DOL's interpretation

of its dual jobs regulation was not entitled to deference. *See Marsh v. J. Alexander's LLC*, 869 F.3d 1108 (9th Cir. 2017). The panel majority concluded that the Guidance's focus on duties and tasks was inconsistent with the dual jobs regulation's focus on jobs and characterized the Guidance as less an interpretation entitled to *Auer* deference than a de facto new regulation masquerading as an interpretation. *See id.* at 1121–24. The panel majority, however, vacated the district court's dismissal of the suit and remanded to give Marsh an opportunity to file an amended complaint. *See id.* at 1127.

A majority of the non-recused active judges voted to grant Marsh's petition for rehearing en banc. *See Marsh v. J. Alexander's LLC*, 882 F.3d 777 (9th Cir. 2018). We reverse the district court's judgments and conclude, as the Eighth Circuit did in *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011), that the Guidance is entitled to *Auer* deference.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's final orders and its interpretation of the relevant statutory and regulatory provisions.[4] *See Shaver v. Operating Eng'rs Local 428*

---

[4] The district court granted motions to dismiss in six of the cases, judgment on the pleadings in two of the cases, and summary judgment in one case. Our review of the district court's final orders and interpretation of the FLSA and the dual jobs regulation is de novo for all nine cases. *See, e.g.*, *Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924, 929 (9th Cir. 2008) (judgment on the pleadings); *Kalantari v. NITV, Inc.*, 352 F.3d 1202, 1204 (9th Cir. 2003) (summary judgment).

*Pension Tr. Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003) (motion to dismiss).

## III.

This case revolves around several statutory and regulatory provisions and agency guidance governing the payment of wages to tipped employees: the FLSA, the dual jobs regulation, and the Guidance. Although the FLSA guarantees all workers a federal minimum wage of $7.25 per hour, *see* 29 U.S.C. § 206(a)(1)(c), employers may pay tipped employees a reduced tip credit wage below the hourly minimum wage, *see id.* § 203(m).[5] A tipped employee is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *Id.* § 203(t). Employers may therefore take up to a $5.12 tip credit against the full hourly minimum wage and pay tipped employees as little as $2.13 per hour in cash

---

[5] Section 203(m), which created the alternative pay scheme for tipped employees, provides, in relevant part:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

wages so long as the employee's tips bring him or her up to minimum wage.[6] *See Fast*, 638 F.3d at 874–75. If, however, a server's tips fall short of covering the minimum wage, the employer must increase the employee's cash wage to make up the difference. *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 (9th Cir. 2010).

Seeking to clarify the meaning of a "tipped employee" under the statute—including what constitutes an "occupation" that "customarily and regularly" receives tips—the DOL promulgated several regulations in 1967. One of these regulations, 29 C.F.R. § 531.56, explains that "[a]n employee employed full time or part time in an occupation in which he does not receive more than $30 a month in tips customarily and regularly is not a 'tipped employee' within the meaning of [the FLSA]" and that a calendar month need not be used to determine whether an employee meets the $30-a-month benchmark. *Id.* § 531.56(a), (b). The DOL also included a provision in this regulation directly addressing situations in which an employee is employed in dual jobs, one tipped and one not. This dual jobs regulation states in full:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee *only* with respect to his employment as a waiter. He is employed in

---

[6] Arizona state law caps the tip credit at $3.00 instead of $5.12. *See* Ariz. Rev. Stat. § 23-363(C) (2007). This difference is irrelevant to whether Marsh has stated a claim under the FLSA as a matter of law.

two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, *takes a turn* as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (emphases added).

The dual jobs regulation initially generated some confusion among employers, who were unsure whether their tipped employees qualified as dual job employees. The DOL consequently issued several opinion letters in an attempt to delineate the boundaries of the dual jobs regulation. The DOL ultimately released a guidance addressing the dual jobs regulation in its Wage and Hour Division's Field Operations Handbook ("FOH") in 1988, which the DOL revised in 2012. *See* FOH § 30d00(e) (1988) (the "Guidance"). Judge Ikuta calls the Guidance a new rule promulgated by the DOL, but it is clearly an interpretation in line with that of the DOL's prior opinion letters. The most recent version of the Guidance states:

(1) When an individual is employed in a tipped occupation and a non-tipped occupation, for example, as a server and

janitor (dual jobs), the tip credit is available only for the hours spent in the tipped occupation, provided such employee customarily and regularly receives more than $30.00 a month in tips. *See* 29 CFR 531.56(e).

(2) 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are *incidental* to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.

(3) However, where the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

(4) Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the

tipped occupation. For example, maintenance work (*e.g.*, cleaning bathrooms and washing windows) *are not related* to the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

FOH § 30d00(f) (2016) (emphases added).[7]

---

[7] This formulation represents the DOL's current interpretation of the dual jobs regulation and may be found online at https://www.dol.gov/whd/FOH/FOH_Ch30.pdf. The 20% benchmark has been in place since the Guidance was first issued in 1988. The 1988 version of the Guidance provided in full:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends *some time* cleaning and setting tables, making coffee, and *occasionally* washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are *routinely* assigned to maintenance, or that tipped employees spend a *substantial amount of time* (in excess of 20 percent) performing preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees at 13, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872

The Guidance thus clearly contemplates that a server who performs unrelated tasks, such as cleaning restrooms, is a dual job employee entitled to the full minimum hourly wage for her unrelated work. The Guidance also clearly lays out that a server is a dual job employee if her related tasks occupy more than 20% of her hours in a workweek.

The dissent takes issue with the 2012 update to the Guidance[8] and asserts that this was the first time the agency "provided that employers could not take a tip credit for any time employees spent on tasks that did not directly relate to serving customers." Dissent at 61–62. This presumes, of course, that prior to 2012, the DOL would have permitted employers to take a tip credit even for hours a server spent on tasks unrelated to their tipped occupation. As we discuss *infra*, the dual jobs regulation squarely forecloses that line of argument by distinguishing between a tipped employee who spends some time completing related, but untipped work, and a dual job employee who works as a maintenance man part of the time and a server the rest. 29 C.F.R. § 531.56(e). Accordingly, if both the Guidance and the dual jobs regulation are entitled to deference, then Marsh has alleged

---

(8th Cir. 2011) (Nos. 10-1725/26), 2010 WL 3761133 (quoting FOH § 30d00(e) (1988)).

[8] The dissent's characterization of the Guidance as a "Time-Tracking Rule" is a novel one. Dissent at 62. Neither the district court nor the parties referred to the Guidance in this manner. Indeed, the prior panel opinion—which was authored by Judge Ikuta—never mentioned this "Time-Tracking Rule." *See Marsh v. J. Alexander's LLC*, 869 F.3d 1108 (9th Cir. 2017), *reh'g en banc granted by Marsh v. J. Alexander's LLC*, 882 F.3d 777 (9th Cir. 2018) (referring to the Guidance as "the FOH § 30d00(f)," "the FOH," and "the guidance").

facts sufficient to make out an FLSA minimum wage violation claim.  We turn to those questions.[9]

### A.

Defendants first contend that the dual jobs regulation is not entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  We disagree.

### 1.

As an initial matter, it is beyond question that the DOL promulgated the dual jobs regulation, 29 C.F.R. § 531.56, in the exercise of its congressionally delegated authority.  *See United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001). Congress amended the FLSA in 1966 by defining "tipped employee" for the first time, *see* 29 U.S.C. § 203(t), and adding a formula for calculating the wage of a tipped employee, *see id.* § 203(m).  *See* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 101, 80 Stat. 830, 830.  The 1966 Amendments authorized the Secretary of Labor "to promulgate necessary rules, regulations, or orders with regard to the amendments made by this Act." *Id.*

---

[9] We are not the first circuit to grapple with these questions.  The Eighth Circuit addressed similar claims brought by tipped employees in *Fast v. Applebee's Int'l Inc.*, 638 F.3d 872 (8th Cir. 2011). The employers in *Fast*, however, conceded that the dual jobs regulation was entitled to *Chevron* deference.  *See id.* at 877.  The Eighth Circuit focused instead on whether the Guidance was entitled to *Auer* deference.  The court concluded that because the dual jobs regulation was ambiguous and included temporal considerations, the Guidance was not plainly erroneous or inconsistent with the regulation and was therefore entitled to deference.  *See id.* at 879–80.  Accordingly, the district court did not err when it denied the employer's motion for summary judgment.  *See id.* at 882.

at § 603, 80 Stat. at 844.  Shortly thereafter, the DOL issued a notice of proposed rulemaking aimed at "expand[ing] 29 CFR Part 531 to make provisions responsive" to the "Fair Labor Standards Amendments of 1966," specifically the newly amended sections 203(m) and 203(t) regarding tipped employees.  32 Fed. Reg. 222, 222 (Jan. 10, 1967).  This process eventually produced the dual jobs regulation, 29 C.F.R. § 531.56(e).  *See* 32 Fed. Reg. 13,575 (Sept. 27, 1967).

Defendants nonetheless urge us to conclude that *Chevron* deference is inapplicable in this instance because the dual jobs regulation was promulgated without adequate notice and an opportunity to comment.  This argument, however, is decades too late.  *See Perez-Guzman v. Lynch*, 835 F.3d 1066, 1077 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 737 (2018) ("Procedural challenges to agency rules under the Administrative Procedure Act are subject to the general six-year limitations period in the U.S. Code."); *see also* 28 U.S.C. § 2401(a).  The dissent may object to the way the DOL promulgated the dual jobs regulation, but as a matter of law, such procedural challenges to the regulation here are indisputably untimely and beyond our scope of review.  Dissent at 58–60.  We therefore conclude that *Mead*'s requirements have been met.  533 U.S. at 226–27.

**2.**

Applying the *Chevron* framework, we next ask whether "Congress has directly spoken to the precise question at issue."  467 U.S. at 842.  We conclude that it has not.

Section 203(t) defines a tipped employee as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).  The FLSA, however, does not separately

define "occupation." *Id.* Nor does the statute shed light on the meaning of "customarily and regularly." *Id.* Counsel for Defendants urge us to conclude that the use of the word "occupation" in section 203(t) was not "intended to do a lot of work" and that the statute is therefore "not ambiguous." United States Court of Appeals for the Ninth Circuit, *15-15791 Alec Marsh v. J. Alexander's LLC*, YouTube (Mar. 20, 2018) at 47:10–47:15; 49:45–49:51. We decline to treat Congress's choice of words so dismissively; to the contrary, we must presume that Congress's choice of words is deliberate. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013). Accordingly, we agree with the Eighth Circuit that where, as here, Congress has crafted an ambiguous statute and tasked the DOL with implementing the ambiguous provisions, we must "defer to the agency's regulation so long as it is not arbitrary, capricious, or manifestly contrary to the statute." *Fast*, 638 F.3d at 876 (internal quotation marks omitted).

Contrary to Defendants' assertions, the FLSA's legislative history does not "evince an unambiguous congressional intention" to treat all employees as tipped employees, regardless of their tasks or time spent on untipped tasks. *Chem. Mfrs. Ass'n v. Nat. Res. Def. Council, Inc.*, 470 U.S. 116, 129 (1985). At most, Congress suggested in a Senate report—published seven years after the DOL promulgated its dual jobs regulation—that "[i]n establishments where the employee performs a variety of different jobs, the employee's status as one who 'customarily and regularly receives tips' will be determined on the basis of the employee's activities over the entire workweek." S. Rep. No. 93-690, at 43 (1974). Under Defendants' view, this sentence indicates that section 203(t) unambiguously allows employers to take a tip credit for every hour an employee spends working, as long as the

employee's total tips exceed $30 per month—even if the employee engages in tipped work only 10% of the time. *See* United States Court of Appeals for the Ninth Circuit, *15-15791 Alec Marsh v. J. Alexander's LLC*, YouTube (Mar. 20, 2018) at 34:43–35:45.

But this sentence does not bear the weight Defendants put on it. Critically, the legislation accompanying the 1974 report did not make any changes to section 203(t). Further, the report expressly recognized "the ethical question involved in crediting tips toward the minimum wage" and emphasized that tipped employees "should have stronger protection to ensure the fair operation" of the tip credit provision. S. Rep. No. 93-690 at 42–43. Neither the plain language of the statute nor its legislative history suggest— much less clearly demonstrate—that section 203(t) is unambiguous.

### 3.

Having concluded that the FLSA "is silent or ambiguous" with respect to the treatment of employees who make more than $30 a month in tips but who may be engaged in multiple occupations, we consider "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. We conclude that it is.

The 1966 amendments to the FLSA were intended to "improve living standards by eliminating substandard working conditions in employment" and to bring the law up to date with the "advancing economy," which had outpaced the FLSA's worker protections. H.R. Rep. No. 89-1366, at 10 (1966). Later amendments to the FLSA stressed the importance of guaranteeing "a fair day's pay for a fair day's work." H.R. Rep. No. 93-913, at 8 (1974). The dual jobs regulation, which was promulgated to give effect to new

statutory provisions addressing tipped employees, was neither an arbitrary reversal of a prior agency position nor "manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. Confronted with a gap in the FLSA's coverage of dual job employees, the DOL reasonably exercised its authority to fill that gap by ensuring that employees working in tipped and untipped occupations would not be shortchanged by their employers.

Defendants concede that under the FLSA, if some of an employee's tasks were outside the scope of a tipped occupation, the employee would be engaging in non-tipped employment for which the employer would not be entitled to take a tip credit. *See* United States Court of Appeals for the Ninth Circuit, *15-15791 Alec Marsh v. J. Alexander's LLC*, YouTube (Mar. 20, 2018) at 35:05–35:45. That is precisely the kind of situation the dual jobs regulation addresses.

The dual jobs regulation establishes that an employee is entitled to the full minimum wage for any time spent in a non-tipped occupation. *See* 29 C.F.R. § 531.56(e). Thus, an employee who serves as both a maintenance man and a waiter in a hotel "is a tipped employee only with respect to his employment as a waiter." *Id.* This provision prevents employers from paying maintenance workers as little as $2.13 an hour, simply because they also happen to work as servers. Having concluded that the dual jobs regulation "is a reasonable choice within a gap left open by Congress, the challenge must fail."[10] *Chevron*, 467 U.S. at 866.

---

[10] We note that in many of the challenges to the Guidance, the employers do not contest that the dual jobs regulation is entitled to *Chevron* deference. *See, e.g.*, *Fast*, 638 F.3d at 877; *Knox v. Jones Grp.*, 201 F. Supp. 3d 951, 961 n.8 (S.D. Ind. 2016); *Chavez v. T&B Mgmt.*,

## B.

Our inquiry, however, does not end with the dual jobs regulation.  For Marsh to state a claim under the FLSA, we must also conclude that the Guidance—which establishes the 20% related duties benchmark and separates occupations by duties—is entitled to judicial deference under either *Auer v. Robbins*, 519 U.S. 452 (1997), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *See Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1035 (9th Cir. 2013).  Because the dual jobs regulation is ambiguous and the Guidance's interpretation is both reasonable and consistent with the regulation, we agree with the Eighth Circuit that the Guidance is entitled to *Auer* deference.[11]  *See Fast*, 638 F.3d at 880–81.

## 1.

"[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (quoting *Auer*, 519 U.S. at 461).  "Under this standard, we defer to the agency's interpretation of its [ambiguous]

---

*LLC*, No. 1:16cb1019, 2017 WL 2275013, at *5 (M.D.N.C. May 24, 2017).  In cases where defendants have disputed whether *Chevron* applied, the argument has not been successful.  *See, e.g., Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 583 n.9 (S.D.N.Y. 2015); *Goodson v. OS Rest. Servs., LLC*, No. 5:17-cv-10-Oc-37PRL, 2017 WL 1957079, at *6 (M.D. Fla. May 11, 2017).

[11] The Eighth Circuit deferred to an earlier version of the Guidance, *see* FOH § 30d00(e) (1988).  The differences between the current version of the Guidance and its predecessor, however, are immaterial because both utilize the 20% benchmark.

regulation unless an 'alternative reading is *compelled* by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation.'" *Id.* at 391 (emphasis and second alteration in original) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). Interpretations that "do[] not reflect the agency's fair and considered judgment of the matter in question" or unfairly surprise regulated parties are not entitled to *Auer* deference. *Christopher v. SmithKline*, 567 U.S. 142, 155–56 (2012) (quoting *Auer*, 519 U.S. at 462).

[S]We agree with Marsh that the dual jobs regulation is ambiguous.[12] The dual jobs regulation, like the FLSA, does

---

[12] Unlike with *Chevron* deference, there is no preliminary analysis that precedes *Auer*'s two-step analysis. *Cf. Oregon Rest. and Lodging Ass'n v. Perez*, 815 F.3d 1080, 1086 n. 3 (9th Cir. 2016) (acknowledging that *United States v. Mead Corp.*, 533 U.S. 218 (2001) created a "*Chevron* step zero" that precedes the *Chevron* test). There is certainly no mandatory "threshold question" regarding whether the interpretation in question is a "legislative rule" as opposed to an interpretation. Dissent at 64. The dissent's reliance on *Mission Group Kansas, Inc. v. Riley*, 146 F.3d 775 (10th Cir. 1998), and *Director, OWCP v. Mangifest*, 826 F.2d 1318 (3d Cir. 1987), to establish the boundaries of *Auer* deference is puzzling. Dissent at 64–65. For one, neither case mentions *Auer*—indeed, *Mangifest* predates *Auer* by over nine years. For another, the Supreme Court has never adopted a pre-*Auer* test that asks at the outset whether an interpretation is a regulation in disguise. In fact, the Supreme Court's case law seems to suggest the exact opposite. In *Christensen v. Harris County*, 529 U.S. 576 (2000), the Supreme Court held that if a court determines at *step one* of *Auer* that a regulation is unambiguous, the court cannot defer to the agency's position because that would sanction the de facto creation of a new regulation to override a previously existing one. *Id.* at 588. The dissent's citation to *Gonzales v. Oregon*, 546 U.S. 243 (2006), does nothing to make up the paucity of case law supporting the dissent's interpretation of *Auer*, in part because the dissent omits critical context in describing the Court's holding.

not offer a precise definition for "occupation." Instead, the regulation relies on a series of examples to illustrate the difference between a tipped employee and a dual job employee engaged in both a tipped and an untipped occupation. *See* 29 C.F.R. § 531.56(e). The regulation explains that a person working as both a maintenance man and a server is obviously "employed in two occupations," such that "no tip credit can be taken for his hours of employment in his occupation of maintenance man." *Id.* But it does not explain *how* to classify the person's occupation—whether through official title, expected duties, or some other method. *See Fast*, 638 F.3d at 877.

The second half of the dual jobs regulation suggests that the DOL likely intended to tie a person's occupation to his or her duties. *See* 29 C.F.R. § 531.56(e) (explaining that the maintenance man/server's situation is "distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses"). But like a door leading to more doors, this clarification only produces more

---

*Gonzales* made clear that *Auer* deference was inappropriate because the supposedly ambiguous regulation at issue simply parroted the statute. *Id.* at 257. Because "[a]n agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language," the Court concluded that *Auer* deference was inapplicable to the interpretive rule at issue. This is a well-established exception to *Auer* deference that has no bearing on this case. None of the Defendants argue that the dual jobs regulation merely parrots the language of the FLSA, nor could they given the obvious differences.

The Defendants were free to separately challenge whether the Guidance should have gone through notice-and-comment rulemaking. That they did not means this argument is waived. *See infra* p. 37 n.19.

questions.  As the Eighth Circuit recognized, although the regulation establishes that a server who spends "part of her time" cleaning tables and "occasionally" washing dishes is not a dual job employee, *see id.*, the regulation does not define either ambiguous, temporal term.[13]    *See Fast*, 638 F.3d at 877.  If a server spends 10% of her time washing dishes, does that qualify as "occasional"?  What about 30%?  The regulation's silence on this point is compelling evidence of its ambiguity.  We therefore disagree with Judge Graber's reading of the regulation.  *See* Partial Concur. at 48–49.  Had the DOL intended to unambiguously foreclose servers from being dual job employees regardless of the amount of time they spend on related, but untipped duties, the regulation would not include the temporal limitations it does.  Instead, the dual jobs regulation would have read: "Such a situation is distinguishable from that of a waitress who spends her time serving customers or completing related, but untipped tasks, such as cleaning and setting tables, toasting bread, and making coffee."   By restricting related duties with limitations such as "occasionally," "part of [the] time," and "tak[ing] a turn," the dual jobs regulation necessarily distinguishes between single-job employees who only occasionally complete related tasks, and dual-job employees

---

[13] Similarly, the regulation's reference to a "counterman who also prepares his own short orders or who, as part of a group of countermen, *takes a turn* as a short order cook for the group," 29 C.F.R. § 531.56(e) (emphasis added), as one example of a non-dual job employee offers no details on the meaning of "taking a turn."  There must be a point at which the counterman is no longer just taking a turn as a short order cook but instead actually *working* as a short order cook.  The regulation, however, is devoid of even a hint as to what that point might be.

who regularly do.[14]  What the regulation leaves undefined is the point at which this transformation occurs.

The same is true of the regulation's reference to "related duties," 29 C.F.R. § 531.56(e), which suggests two distinctions: one between related and unrelated duties; and the other between duties related to a tipped occupation and duties that are part and parcel of a tipped occupation.  The regulation states that cleaning tables, washing dishes, making coffee, and toasting bread are all duties related to a server's occupation, but offers no guidance as to other duties, such as cleaning the restroom or chopping fruits and vegetables in the kitchen.  *See id.*  The regulation also leaves open the possibility that when a tipped employee engages in tasks related to her tipped occupation—but which are not actually synonymous with her tipped occupation—more than occasionally or part of the time, those related tasks form a separate, untipped job for which the employer is not entitled to take a tip credit.  These interpretive gaps, including the regulation's failure to "define 'related duties,'" *Fast*, 638 F.3d at 877, all serve as additional evidence of the regulation's ambiguity.

---

[14] Consider, for instance, a server who spends 90% of her time wiping down tables, for which she receives no tips, and the remaining 10% of her time assisting customers.  Under Judge Graber's view, the dual jobs regulation would unambiguously consider this server a single-job, tipped employee because it is immaterial whether the server is spending her time on tipped duties or related duties.  Partial Concur. at 51–53.  We think this example is plainly inconsistent with the text of the dual jobs regulation.  A server who spends 90% of her time on related duties is not spending "part of her time" on such tasks any more than she is "occasionally" engaging in untipped work.

**2.**

Having concluded that the dual jobs regulation is ambiguous, we next consider whether the Guidance is "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (internal quotation marks omitted). The DOL's interpretation is consistent with nearly four decades of interpretive guidance and with the statute and the regulation itself. Together, these factors strongly counsel in favor of applying *Auer* deference to the Guidance.

The dual jobs regulation relies on two undefined factors to determine whether an employee is a dual-job employee: (1) the relatedness of an employee's duties to a tipped occupation and (2) the amount of time an employee spends on completing related but untipped duties. *See* 29 C.F.R. § 531.56(e) (clarifying that an employee who spends "part of her time" on duties "related" to her tipped occupation that are not themselves "directed toward producing tips" is not a dual jobs employee). In the decades following the regulation's promulgation, the DOL continuously endeavored to provide employers with further guidance on the regulation in the form of opinion letters. These efforts eventually culminated in the creation of the Guidance in the DOL's Field Operations Handbook ("FOH") in 1988.[15] *See* Brief for the Secretary of Labor as Amicus Curiae, Dkt. No.

---

[15] The FOH is an "operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance." *See* Wage & Hour Div., Dep't of Labor, *Field Operations Handbook* (Aug. 31, 2017), *available at* https://www.dol.gov/whd/FOH/index.htm. The FOH "reflects policies established through changes in legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator." *Id.*

45, at 16 (hereinafter "DOL Amicus Brief") ("The FOH interpretation was based on, and is consistent with, the prior opinion letters.").

The Guidance attempts to address the regulation's ambiguity by establishing three definitions, each of which builds on an interpretation of the regulation. First, the Guidance limits "related duties" to those that are "incidental to the regular duties of the tipped employees and are generally assigned to the tipped employees." FOH § 30d00(f)(2) (2016). Second, the Guidance establishes that a tipped employee who spends a "substantial amount of time," defined as "in excess of 20 percent of the hours worked in the tipped occupation in the workweek," on such related duties may not be paid the reduced tip credit wage. *Id.* § 30d00(f)(3). "All related duties count toward the 20 percent tolerance," meaning that a server need not spend all of that time on one related task, such as washing dishes, to qualify as a dual job employee. *Id.* Third, the Guidance makes explicit the regulation's suggestion that occupations are defined by their tasks. *See id.* § 30d00(f)(4) ("For example, maintenance work (*e.g.*, cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations."). Accordingly, the Guidance recognizes that a server is no longer engaged in a tipped occupation once she starts cleaning bathrooms and washing windows, because those tasks fall within the purview of a separate, non-tipped occupation.[16] *See id.*

---

[16] Contrary to the dissent's position, an agency need not explicitly identify in its guidance each ambiguous word it is defining in order to provide a valid interpretation of an ambiguous regulation. Dissent at 20–22. There is no "magic words" requirement under *Auer.* At any rate, the

Citing *Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007 (9th Cir. 2011), Defendants contend that the Guidance is not entitled to deference because the FOH includes a disclaimer that it "is not used as a device for establishing interpretive policy." *Id.* at 1012. Defendants' argument fails because the DOL has adopted the Guidance's interpretation in its amicus brief. *See* DOL Amicus Brief at 16; *Fast*, 638 F.3d at 877. It is well-settled law that courts may afford an agency's interpretation *Auer* deference if the interpretation is advanced through an amicus brief. *See Auer*, 519 U.S. at 461; *Barrientos v. 1801–1825 Morton LLC*, 583 F.3d 1197, 1214 (9th Cir. 2009) ("Further, an agency's litigation position in an amicus brief is entitled to deference if there is no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter." (internal quotation marks omitted)).

We similarly reject as unpersuasive Defendants' brief argument that the Guidance is not entitled to *Auer* deference because employers in this country did not have "notice that they must pay an employee . . . based on an agency's internal advice given to its field investigators." *Christopher v.*

---

dissent's claim that "the Rule fails to clarify any of the phrases in the dual job regulation" because the agency failed to identify each ambiguous term it was defining is unsupported by the facts. Dissent at 73. In its 2010 amicus brief adopting the Guidance, the DOL explained that the Guidance was intended to "affix[] a specific limit to the regulation's tolerance for the 'occasional' performance of such related duties," "identify a number of duties related to the tipped occupation," and elaborate on the difference between a tipped and non-tipped occupation. *See* Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees at 9, 11–12, 29 n.9, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725/26), 2010 WL 3761133.

*SmithKline Beecham Corp.*, 567 U.S. 142 (2012), held that *Auer* deference is not warranted when an agency's interpretation would "impose potentially massive liability" without first providing regulated parties "fair warning of the [prohibited] conduct." *Id.* at 155–56. There, the Court recognized that preventing "unfair surprise[s]" outweighed the "general merits of *Auer* deference," particularly where the agency's interpretation postdated the regulated parties' conduct. *Id.* at 156, 159; *see also Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1035 (9th Cir. 2013) ("[T]he Court has deemed *Auer* deference unsuitable when such deference would result in 'unfair surprise' to one of the litigants.").

Here, in contrast, the Guidance has been in place since 1988 and was published to the Internet pursuant to the Electronic Freedom of Information Act Amendments of 1996. *See* Wage & Hour Div., Dep't of Labor, *Field Operations Handbook* (Aug. 31, 2017), *available at* https://www.dol.gov/whd/FOH/index.htm. The DOL also adopted the Guidance's interpretation and the 20% benchmark in its amicus brief to the Eighth Circuit in *Fast*, which was filed on September 15, 2010—two years before Marsh began his employment with J. Alexander's. *See* Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725/26), 2010 WL 3761133. Defendants were therefore on notice at least as of September 15, 2010—if not before[17]—that their conduct was not in compliance with the dual jobs regulation.

---

[17] It may be that employers "have had access to the DOL's view on the 20 percent rule for decades," as Plaintiffs claim, which would further cut against unfair surprise. On the record before us, however, it is

As a result, unlike the plaintiffs in *SmithKline*, Marsh's theory of liability rests on an interpretation that *predates* Defendants' conduct. This is not a case where the instant suit represents the first and only time the DOL has advanced the interpretation at hand. *See, e.g.*, *Emp'r Sols. Staffing Grp. II, LLC v. Office of Chief Admin. Hearing Officer*, 833 F.3d 480, 488–90 (5th Cir. 2016) (concluding *Auer* deference was unwarranted because the proffered interpretation emerged from a single decision by the ALJ in the instant case). Nor is this a case where the agency failed to issue "interpretative guidance indicating [its] current position," *Perez v. Loren Cook Co.*, 803 F.3d 935, 943 (8th Cir. 2015) (en banc), considering the DOL adopted the Guidance in its 2010 amicus brief. Further, as we discuss later, the DOL has regularly promulgated regulations that use the 20% benchmark to distinguish between substantial and incidental amounts of time. We therefore conclude that

---

unclear when the Guidance was first published online—only that it must have been after 1996. *See* Wage & Hour Div., Dep't of Labor, *Field Operations Handbook* (Aug. 31, 2017), *available at* https://www.dol.gov/whd/FOH/index.htm (explaining that the DOL chose to publish its FOH "on the Internet pursuant to its obligation under FOIA [Freedom of Information Act] to make available administrative staff manuals and instructions to staff that affect members of the public, 5 U.S.C. 552(a)(2)," which was amended in 1996 to requires agencies to make such records available by computer telecommunications or other electronic means); *see also* H. Rep. No. 104-795, at 20 (1996) (clarifying that the 1996 amendments to 5 U.S.C. 552(a)(2) were intended to ensure that agency information would be made available "online"). It is therefore impossible to say, as the dissent does, that "th[e] 20-percent cap was not made public until decades later, when the DOL included it in an amicus brief." Dissent at 61. We therefore do not reach whether Defendants were on notice before September 15, 2010.

the Guidance did not unfairly surprise Defendants as of September 15, 2010.[18]

Defendants next contend that the Guidance is not entitled to deference because its 20% limitation on related duties is inconsistent with the dual jobs regulation itself.[19] We disagree. As the Eighth Circuit recognized in *Fast*, "[b]y using the terms 'part of the time' and 'occasionally,' the

---

[18] The dissent asserts that it was "not until 2016 that employers learned they could not take a tip credit for any time" spent on unrelated tasks. Dissent at 82–83. The text of the dual jobs regulation, however, belies the dissent's timeline, as does the DOL's opinion letter dating back to 1985. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA-854 (Dec. 20, 1985), *available at* 1985 WL 1259240, at 2 ("[S]alad preparation activities are essentially the activities performed by chefs and no tip credit may be taken for the time [the employer's servers] spent in preparing vegetables for the salad bar."); *see also supra* pp. 28–29, 62; *infra* pp. 40–41. Moreover, Marsh alleged in his first complaint, which was filed in 2014, that "[i]n addition to tipped work, Defendant regularly and consistently required Plaintiff to perform non-tipped work unrelated to this tipped occupation, for which Plaintiff was paid at the reduced tip credit rate, in willful violation by Defendant of the FLSA." If Marsh was aware of these limitations on the tip credit well before 2016, it is a fair assumption that his employer was as well.

[19] Although several of the Defendants briefly assert in one sentence that the Guidance has created a new cause of action and therefore violates the separation of powers principle, they have offered no supporting authority for that proposition and have failed to elaborate on their point. As such, this argument is waived. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 n.26 (9th Cir. 2008) (en banc) ("It is well-established that a bare assertion in an appellate brief, with no supporting argument, is insufficient to preserve a claim on appeal."). Accordingly, we express no opinion as to whether the 20% rule is legislative, rather than interpretive, and therefore subject to the Administrative Procedure Act's notice and comment requirement. *See* 5 U.S.C. § 553(b); *see also Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165 (7th Cir. 1996); *Catholic Health Initiatives v. Sebelius*, 617 F.3d 490 (D.C. Cir. 2010).

regulation clearly places a temporal limit on the amount of related duties an employee can perform and still be considered to be engaged in the tip-producing occupation." 638 F.3d at 879 (internal alterations omitted); *see also Knox v. Jones Grp.*, 201 F. Supp. 3d 951, 961 (S.D. Ind. 2016) (applying *Auer* deference because "[t]hrough its use of the terms 'part of the time' and 'occasionally,' the dual-jobs regulation embodies temporal limitations regarding the performance of related, non-tipped duties" (internal alteration omitted)); *Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 583 (S.D.N.Y. 2015) (explaining that "district courts across the country have likewise endorsed the twenty percent rule").

The dual jobs regulation states that a server who occasionally washes dishes is not a dual job employee. *See* 29 C.F.R. § 531.56(e). The Guidance states that a server who spends 20% of her time or less washing dishes is not a dual job employee. *See* FOH § 30d00(f)(3). There is nothing inconsistent between these two statements because the regulation does not limit the meaning of "occasionally" beyond its ordinary meaning of "now and then; here and there; sometimes." *Fast*, 638 F.3d at 879–80 (quoting *Webster's Third New Int'l Unabridged Dictionary* 1560 (1986)). True, the DOL could arguably have set the limit higher, but it did not and we are not at liberty to disturb the agency's "fair and considered judgment on the matter in question." *Auer*, 519 U.S. at 462.

Furthermore, the DOL's 20% threshold is consistent with its treatment of other temporal limitations. This, too, counsels in favor of applying *Auer* deference. *See Fast*, 638 F.3d at 881 (deferring to the Guidance in part because the 20% threshold draws from numerous other FLSA provisions); *cf. Friedman v. Sebelius*, 686 F.3d 813, 825

(D.C. Cir. 2012) (granting the agency's interpretation *Auer* deference even though "the regulations elsewhere distinguish between 'acts' and 'omissions,'" and the agency interpreted a regulation's use of only "acts" to include both acts and omissions). The DOL adopted the 20% rule in order to ensure conformity with "various other FLSA provisions, interpretations, and enforcement positions setting a 20 percent tolerance for work that is incidental to but distinct from the type of work to which an exemption applies."[20] DOL Amicus Brief at 19 n.6. Because the DOL has consistently utilized the 20% threshold to distinguish between substantial and incidental or occasional work in a variety of contexts, it is especially appropriate to defer to the Guidance.

We find similarly unpersuasive Defendants' contention that the Guidance's focus on duties is "patently inconsistent" with the dual jobs regulation's "occupation-based analysis." Defendants' argument rests on an artificial distinction

---

[20] *See, e.g.*, 29 U.S.C. § 213(c)(6)(G) (permitting 17-year-old employees to drive automobiles or trucks on public roadways as part of their employment so long as the driving is "occasional and incidental," defined as "no more than 20 percent of an employee's worktime in any workweek"); 29 C.F.R. § 552.5 (explaining that "[c]asual babysitting services may include the performance of some household work not related to caring for the children: *Provided, however*, That such work is incidental, i.e., does not exceed 20 percent of the total hours worked on the particular babysitting assignment" (emphasis in original)); 29 C.F.R. § 552.6(b) ("The term companionship services also includes the provision of care . . . if it does not exceed 20 percent of the total hours worked per person and per workweek."); 29 C.F.R. § 786.150 ("For enforcement purposes, the amount of nonexempt work will be considered substantial if it occupies more than 20 percent of the time worked by the employee during the workweek."); 29 C.F.R. § 786.1 (same); 29 C.F.R. § 786.100 (same); 29 C.F.R. § 786.200 (same).

between occupations and duties. One cannot define the former without some reference to the latter.[21]    *See Occupation*, *Black's Law Dictionary* (10th ed. 2014) (defining "occupation" to mean "an *activity* or pursuit in which a person engages" (emphasis added)). The tip credit regulation states that "[a]n employee who receives tips . . . is a 'tipped employee' . . . when, in the occupation in which he is *engaged*, the amounts he receives as tips [exceed the requisite amount]." 29 C.F.R. § 531.56(a) (emphasis added). The dual jobs regulation—a sub-provision of the tip credit regulation—elaborates that a tipped employee who occasionally performs "related" but untipped "duties" is not employed in "two occupations," but that a server who works as a maintenance man is. *Id.* § 531.56(e).

The dual jobs regulation therefore contemplates a difference between tipped and untipped occupations, *as defined* by an employee's duties. The Guidance makes that distinction explicit by sorting the duties accordingly: (1) an employee who engages in duties "directed toward producing tips" or spends 20% of her workweek or less on duties related to "the regular duties of the tipped employees" works in a tipped occupation and may receive the reduced tip credit cash wage; (2) on the other hand, an employee who engages in untipped "work that is *not* related to the tipped occupation" *or* spends more than 20% of her workweek on related duties that are not themselves directed toward producing tips must be treated as working in an untipped occupation and paid the full hourly minimum wage. FOH § 30d00(f) (emphasis added). The Guidance, far from

---

[21] To paraphrase Shakespeare, a dishwasher by any other name—even a "server"—is still a dishwasher if she spends a substantial part of her time washing dishes.

creating a de facto new rule, closely hews to the framework suggested by the dual jobs regulation.

We also reject Defendants' argument that *Auer* deference is inappropriate here because the DOL's position has changed throughout the years. Before adopting the Guidance in 1988, the DOL issued a number of opinion letters to employers elaborating on the dual jobs regulation. Those opinion letters consistently emphasized the temporal nature of the dual jobs regulation. For instance, although the DOL explained in a 1980 opinion letter[22] that servers who spent part of their time cleaning the salad bar and vacuuming the dining room carpet after closing time could be considered tipped employees, the agency was careful to note that it "might have a different opinion if the facts indicated that specific employees were *routinely assigned*, for example, maintenance-type work such as floor vacuuming." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter WH-502 (Mar. 28, 1980), *available at* 1980 WL 141336 (emphasis added). In a 1985 letter, the DOL reiterated that a server who spent "*part of his or her time*" on tasks such as toasting bread or making coffee could be treated as engaging in a single tipped occupation. U.S. Dep't of Labor, Wage &

---

[22] The DOL also issued an opinion letter in 1979 instructing an employer not to take a tip credit for any time a server spent preparing vegetables for the salad bar before the restaurant opened. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA-895 (Aug. 8, 1979). The DOL reasoned that because the salad preparation activities described were "essentially the activities performed by chefs," the situation paralleled the dual jobs regulation's hypothetical maintenance man/waiter example. *Id.* Accordingly, there was no need for a time analysis because the employee engaged in a second occupation any time she was tasked with performing unrelated duties, regardless of the time spent on such activities. *See id.* (rejecting the employer's argument that because the work was "de minimis," the employer was entitled to the tip credit).

Hour Div., Opinion Letter FLSA-854 (Dec. 20, 1985), *available at* 1985 WL 1259240 (emphasis added). In that letter, the DOL advised the employer that it could not take a tip credit for any hours a server spent performing preparatory activities that consumed "a substantial portion of the waiter or waitress' workday." *Id.* The DOL focused in particular on the fact that the preparatory tasks typically consumed 30% to 40% of a given employee's workday—a sign that the tasks were not "incidental to the [waiter] or waitress regular duties." *Id.* We therefore agree with the Eighth Circuit that the Guidance "incorporates answers provided in prior opinion letters" and that the DOL's position has remained consistent over the years.[23] *Fast*, 638 F.3d at 878; *see also* DOL Amicus Brief at 24–25 ("The FOH interpretation was based on, and is consistent with, the prior opinion letters.").

As a last-ditch attempt to dismantle the Guidance, Defendants protest that the 20% limitation is not entitled to *Auer* deference because it is "unworkable." But, the DOL could have reasonably concluded otherwise. Employers are ultimately responsible for assigning duties and responsibilities. The allegations that would trigger a FLSA wage violation claim require more than de minimis claims

---

[23] The DOL issued an unpublished opinion letter in 2009 that "rejected the 20 percent tolerance for related, non-tipped duties." DOL Amicus Brief at 25 n.9. This letter, however, was withdrawn after two months with instructions that it not be relied upon as a statement of agency policy. Several courts addressing the 2009 opinion letter have therefore deemed it inconsequential, as do we. *See, e.g.*, *Irvine*, 106 F. Supp. 3d at 735; *Soto v. Wing 'R Us Romeoville, Inc.*, No. 15-cv-10127, 2016 WL 4701444, at *3 n.3 (N.D. Ill. Sept. 8, 2016); *cf. Rivera*, 735 F.3d at 899 n.4 (deferring to the DOL's interpretation despite a "brief[]" change in agency interpretation because "[t]he withdrawal of the brief-lived 2008 interpretation expressly stated that the 2008 interpretation may not be relied upon as a statement of agency policy" (internal quotation marks omitted)).

based on seconds or minutes spent rolling silverware or sweeping a customer's shattered glass. *See Schaefer v. Walker Bros. Enters., Inc.*, 829 F.3d 551, 555 (7th Cir. 2016) ("[T]he possibility that a few minutes a day were devoted to keeping the restaurant tidy does not require the restaurants to pay the normal minimum wage rather than the tip-credit rate for those minutes."). Marsh has alleged far more than the occasional request to tend to related but untipped tasks: he has alleged a continuous practice of assigning him tasks such as cutting lemons and limes, cleaning soft drink dispensers, wiping tables, and taking out the trash. Moreover, Marsh was able to provide information on *when* he was expected to complete each task: "every opening shift," "after most closing shifts," or "after each shift." The scheduled nature of these tasks makes them all the more easy to track.

As several district courts have concluded, it is not impracticable for an employer to keep track of time spent on related tasks by requiring employees to clock in any time spent rolling silverware or cleaning the restaurant before and after the restaurant closes or when business is slow. *See, e.g.*, *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 734 (D.S.C. 2015) ("In any case, since employers, in order to manage employees, must assign them duties and assess completion of those duties, it is not a real burden on an employer to require that they be aware of how employees are spending their time before reducing their wages by 71%."); *Barnhart v. Chesapeake Bay Seafood House Assocs., LLC*, Civil No. JFM-16-01277, 2017 WL 1196580, at *6 (D. Md. Mar. 31, 2017). Unlike the Plaintiffs in *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007), Marsh does not concede that it is "impractical or impossible" to track his tasks. *Id.* at 1313–14. To the contrary, he asserts, consistent with several

district court decisions, that "[s]egregating duties is simple," because employers already have the ability to input codes for employees to clock in and out at different pay rates, *see Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1033 (N.D. Ill. 2012), and because employers are already *required* to maintain records of each hour an employee receives tips and each hour she does not, *see* 29 C.F.R. § 516.28(a).[24]

In short, the DOL's opinion letters, Guidance, and amicus brief positions have long established that discerning whether a person is employed in both a tipped and untipped occupation under the dual jobs regulation requires some consideration of both the *time* an employee spends on a given task and the *type* of task involved. Because the interpretation that the DOL advances in its Guidance and amicus brief is "entirely consistent with its past views," *Auer* deference is warranted. *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 210 (2011).

## IV.

We also decline to affirm the district court's flawed application of *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960). *Klinghoffer* held that requiring workers to work overtime without pay does not violate the FLSA's minimum wage requirements as long as the average hourly pay for the week is equivalent to the minimum wage. *See id.* at 490 (concluding that the requirements of 29 U.S.C. § 206(a) are met "[i]f the total wage paid to each guard in this case during any given week

---

[24] The dissent complains that the Guidance "significantly expands employers' time-tracking obligations," but it acknowledges that the technology to track an employee's duties on shift is already available. Dissent at 81. We therefore fail to see how the Guidance is impracticable.

. . . divided by the total time he worked that week" produces an average hourly wage equal to minimum wage); *see also Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (same).

Marsh, however, has not brought a claim based on failure to pay overtime. To the contrary, he has alleged that he was paid the tip credit cash wage—an amount significantly below minimum wage—for each hour he spent engaged in a non-tipped occupation. His claim is functionally no different than that alleged by an employee who works as a server for one employer and a janitor for another, but sues only the second employer for paying him the tip credit wage every week. *Klinghoffer* is thus inapplicable.

**V.**

Contrary to the dissent's suggestions, the DOL did not embark on a fifty-year undercover mission spanning multiple administrations to erode the FLSA's tip credit provision.[25] Dissent at 63–64. There are no rogue agencies or tales of intrigue to be found in this case. The reality is much less exciting: confronted with an undefined reference to "tipped employees" in the FLSA, the DOL promulgated the dual jobs regulation to clarify that dual job employees do

---

[25] The dissent frames the DOL's actions as "cut[ting] back on employers' opportunity to take a tip credit." Dissent at 60–61. Based on this characterization, the dissent seems to suggest that the FLSA was enacted to protect employers and not employees. It was not. *See* H.R. Rep. No. 89-1366, at 6 (1966) ("The [FLSA] was a response to call upon a Nation's conscience, at a time when the challenge to our democracy was the tens of millions of citizens who were denied the greater part of what the very lowest standards of the day called the necessities of life; when millions of families in the midst of a great depression were trying to live on income so meager that the pall of family disaster hung over them day by day.").

not count as tipped employees in certain circumstances. Employers had six years to challenge this regulation. *See* 28 U.S.C. 2401(a). They did not. Instead, they sought clarification on the dual jobs regulation, which the DOL provided first through its opinion letters and then through the Guidance.

Congress did not intend to give employers a blank check when it enacted the FLSA's tip credit provision. Recognizing this and foreseeing the possibility that employers could misuse this provision to withhold wages from dual job employees like Marsh, who are titled "servers" or "bartenders," but who function in actuality as bussers, janitors, and chefs at least part of the time, the DOL promulgated the dual jobs regulation and issued an interpretative guidance. Together, these two provisions clarify the boundaries of acceptable tip credit use and ensure that a server's tips serve as a gift to the server, as opposed to a cost-saving benefit to the employer. Although the agency had a number of options available to resolve this issue, it is neither appropriate nor reasonable for us to override the DOL's dual jobs regulation and its Guidance where, as here, the latter is consistent with the former and both are consistent with the purpose of the FLSA.

We therefore conclude that Marsh has stated two claims for relief under the FLSA: first, that he is entitled to the full hourly minimum wage for the substantial time he spent completing related but untipped tasks, defined as more than 20% of his workweek; and second, that he is entitled to the same for time he spent on unrelated tasks.[26]

---

[26] Because Crystal Sheehan has alleged a willful violation of the FLSA, *see* 29 U.S.C. § 255(a), the statute of limitations may not have

**REVERSED AND REMANDED.**

GRABER, Circuit Judge, concurring in part and dissenting in part:

Plaintiff Alec Marsh claims that Defendant J. Alexander's LLC failed to pay him appropriate wages both for non-tipped work *related* to his job as a server and for non-tipped work *unrelated* to his job as a server. The majority opinion concludes that both claims are cognizable and that the district court thus erred in dismissing Plaintiff's case. In my view, though, only the latter claim—that Defendant denied Plaintiff wages for work *unrelated* to his tipped occupation—should survive. Accordingly, I would affirm in part and reverse in part.

I agree with the majority opinion that Defendant's procedural challenge to 29 C.F.R. § 531.56(e) (the "dual jobs" regulation) is untimely. *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1077 (9th Cir. 2016). I also agree that, as a substantive matter, the "dual jobs" regulation warrants deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984). As the majority opinion notes, then, Plaintiff's claims rise or fall on whether we owe deference, under *Auer v. Robbins*, 519 U.S. 452, 461 (1997), to the interpretations of that regulation contained in the Department of Labor's ("DOL") Field Operations Handbook.

expired as to her claims. Her suit is remanded for the district court to address this question in the first instance.

Importantly, the Field Operations Handbook ("FOH") provides *two* methods for determining when an employee is engaged in "dual jobs" for purposes of the regulation.  FOH § 30d00(f) (2016) (the "Guidance").  The first looks to the *amount of time* that an employee spends doing work that *relates* to the employee's tipped work but that does not produce tips.  Under this method, if an employee spends more than 20% of his or her time engaged in related—but non-tipped—duties, the employee is engaged in "dual jobs."  The second method classifies an employee as working in "dual jobs" if the employee performs "work that is *not related* to [the employee's] tipped occupation."  *Id.* § 30d00(f)(4) (emphasis added).

Plaintiff's two claims track those two methods.  That is, he claims that he was denied wages both for work related to his job as a server and for work unrelated to his job as a server.  If both of the DOL's interpretations of what constitutes a "dual job" under the regulation were entitled to deference, then both of Plaintiff's claims would be cognizable.

The majority opinion concludes that both interpretations do, indeed, warrant deference and that, as a result, both claims survive.  But, in my view, only one interpretation comports with the regulation—the interpretation that focuses on work unrelated to an employee's tipped occupation.  The other interpretation contained in the Guidance—the one that focuses on the amount of time spent engaged in related but non-tipped work—is not entitled to *Auer* deference.  Plaintiff has thus stated a claim only insofar as he asserts that Defendant denied him wages for work unrelated to his job as a server.  I would affirm the dismissal of Plaintiff's claim that Defendant denied him wages for non-tipped work related to his occupation as a server, but I

would reverse the dismissal of Plaintiff's claim that Defendant denied him appropriate wages for non-tipped work unrelated to his job as a server.

A. Auer *governs this case.*

This case requires us to do something that we have done for decades:  determine whether an agency, in interpreting its own regulation, exceeded the bounds of its authority.  We have a two-step test for making that determination.  *Auer*, 519 U.S. at 461.  We first ask whether the regulation in question is ambiguous.  *Id.*  If so, at the second step, we defer to the agency's interpretation of its regulation so long as the interpretation is not "plainly erroneous or inconsistent with the regulation."  *Id.* (internal quotation marks omitted).

That test makes good sense.  Agencies know the purpose of their own regulations.  *Martin v. Occupational Health & Safety Review Comm'n*, 499 U.S. 144, 151 (1991).  And because "applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives," the Supreme Court presumes that agencies' delegated lawmaking powers include the power to interpret their own regulations.  *Id.*  It is thus entirely reasonable to defer to an agency's interpretation of its own words—given, of course, that we diligently examine agency action for plain error or inconsistency with the regulation.

*Auer* provides an appropriate and sufficient mechanism for accomplishing that task.  Its two steps ensure that agencies stay within the confines of their own regulations—regulations that must, themselves, fill gaps that Congress meant to leave for the agencies to fill.  *Chevron*, 467 U.S. at 842–43.  Our job, which *Auer* helps us do, is to ensure that—like nesting dolls—every agency interpretation fits neatly

within an agency regulation that fits neatly within the authority that Congress has granted to the agency. So long as we faithfully apply *Auer* (and its companion, *Chevron*), we perform that function and avoid the separation of powers concerns that the dissenting opinion describes.

B.  *The Guidance's interpretation focusing on related work does not warrant* Auer *deference.*

The "dual jobs" regulation is no model of clarity. But it plainly forecloses the DOL's interpretation that an employee spending a certain amount of time doing related, but non-tipped, work qualifies as working a dual job. The regulation provides in full:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an

occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

Viewing that regulation as a whole, it determines whether an employee performs "dual jobs" by looking to whether the employee performs tasks *unrelated* to his or her tipped occupation. That is, the regulation has nothing to do with the *amount of time* that an employee spends engaged in non-tipped tasks *related* to the tipped occupation.

The regulation's first example—on which the remainder of the regulation is premised—makes that focus clear. It describes a situation in which an employee performs two different functions: that of a "maintenance man" and that of "waiter." The example says nothing about the amount of time that the employee spends doing each kind of work. That is, the given employee would qualify as having "dual jobs" (only one of which is a tipped occupation) no matter how he split his time between the two jobs. We know, then, that he qualifies as having "dual jobs" not because he spends a certain amount of time as a maintenance man and a certain amount of time as a waiter, but because he performs tasks that are unrelated to one another.

The other two examples—the "counterman" and the "waitress" examples—confirm the regulation's focus on that distinction. Importantly, the regulation presents those two examples as foils to the first example. *See* 29 C.F.R. § 531.56(e) (explaining that the situation of the maintenance man/waiter "*is distinguishable from* that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" and that the same situation "*is likewise*

*distinguishable* from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group" (emphases added)). That is, they are not separate examples of instances in which a person works "dual jobs." The examples, instead, merely illuminate when employees have "dual jobs" by describing instances in which an employee is *not* engaged in "dual jobs."

Read in context, the waitress example does not permit the conclusion that a waitress might work "dual jobs" because she spends a certain amount of time doing non-tipped tasks related to her work as a waitress. Rather, it stands for the notion that she is *not performing two jobs*, because her non-tipped work—unlike the waiter's work as a maintenance man—*relates* to her tipped occupation. So, too, with the counterman example. Accordingly, the majority opinion errs in arguing that the "temporal" words *found exclusively in those counterexamples* muddle the regulation's focus on unrelated work. Maj. op. at 27–31.

The regulation's final sentence puts to rest any ambiguity. That sentence states, in reference to the counterexamples and in clear terms, that "[s]uch *related duties* in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." 29 C.F.R. § 531.56(e) (emphasis added). That final reference to "related duties" makes clear that the three examples exist to demonstrate the distinction between an employee who is engaged in duties *related* to an occupation that produces tips and an employee who is engaged in a job that is *unrelated* to a tipped occupation. The regulation's final sentence thus confirms that one cannot reasonably read the waitress and counterman examples as standing for the notion that a

certain amount of related, non-tipped work constitutes a separate job.

To defeat that reading, the majority opinion comes up with a hypothetical employee of its own. The majority opinion argues that, if one reads the regulation as focused exclusively on work unrelated to a tipped occupation, the regulation would wrongly categorize a "server who spends 90% of her time wiping down tables . . . and the remaining 10% of her time assisting customers" as working in a single, tipped job. Maj. op. at 31 n.14. That hypothetical, even if it points out a poor policy choice, does not change the focus of the "dual jobs" regulation itself. Congress has set requirements that must be met before an employer may take the tip credit. The employee must be a "tipped employee," 29 U.S.C. § 203(m), must "customarily and regularly receive[] more than $30 a month in tips," *id.* § 203(t), and must effectively make the minimum wage, *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 (9th Cir. 2010). The DOL, by promulgating regulations like the one at issue in this case, has elaborated on those requirements. Those regulations might, or might not, prevent employers from taking advantage of the tip credit with respect to employees like the one in the hypothetical. But they are the regulations that the DOL has chosen. Should the DOL wish to avoid, with certainty, results like the one that the majority opinion describes, the agency is free to create, through notice and comment, a new regulation providing that a certain amount of related work becomes a new job. But the "dual jobs" regulation, in its current form, does not do so.

In conclusion, the regulation, in its current form, conflicts with the Guidance's interpretation with respect to work related to a tipped occupation, FOH § 30d00(f)(3). Accordingly, the Guidance does not warrant *Auer* deference

on that point.   Plaintiff thus cannot state a claim that Defendant wrongly denied him appropriate wages for the time that he spent doing work related to his role as a server, and the district court correctly dismissed that claim.

C.  *The Guidance's interpretation focusing on unrelated work warrants* Auer *deference.*

Because the DOL's other interpretation of what constitutes a "dual job" is entitled to deference, Plaintiff's other claim—that Defendant denied him wages for work unrelated to his job as a server—passes muster.   The Guidance's interpretation that an employee qualifies as working "dual jobs" if the employee engages in "work that is not related to [the employee's] tipped occupation" warrants deference for the following reasons.   FOH § 30d00(f)(4).

At *Auer*'s first step, the dual jobs regulation is ambiguous on the point that the Guidance attempts to address.   The regulation, even with its clear focus on whether work is related or unrelated to tipped work, is unclear as to how "unrelated" an employee's duties must be to qualify the employee as working "dual jobs."   Must the employee perform entirely different functions?   Or does performing any duty unrelated to a tipped occupation count as working a dual, non-tipped job?   Must the employee perform the duties at different times of day—maintenance work in the morning, and waiter work in the afternoon—to qualify as having "dual jobs"?   Or is it enough to perform unrelated duties at any time?

The Guidance answers those questions by explaining that an employee who performs *any* "work that is not related to [the employee's] tipped occupation . . . *is effectively* employed in dual jobs."   FOH § 30d00(f)(4) (emphasis

added).  Although that interpretation is not the only one that the regulation would permit, it is not plainly erroneous or inconsistent with the regulation.  The regulation's focus on whether an employee performs non-tipped "related duties" permits the DOL to determine at what point "related duties" rise to the level of unrelatedness to constitute a separate job. The Guidance's interpretation to that effect thus deserves *Auer* deference, and Plaintiff should have been allowed to move forward with his case, arguing that he was denied wages for work unrelated to his job as a server.

The counterman example does not, as the dissenting opinion suggests, plainly foreclose the Guidance's "unrelated work" test.  True, as the dissenting opinion notes, *if* the Guidance categorized the counterman's work as a short order cook as unrelated to his work as a counterman, the Guidance would stand at odds with the regulation.  But the Guidance does not provide a definition of "unrelated work" that conflicts with the counterman example.[1]  That example thus does nothing to discredit the Guidance's test.

In summary, I would affirm the district court's dismissal of Plaintiff's claim that Defendant denied him wages for non-tipped work *related* to his occupation as a server, but I would reverse the district court with respect to Plaintiff's claim that Defendant denied him appropriate wages for non-tipped work *unrelated* to his job as a server.

---

[1] The dissenting opinion quotes the provision concerning "*related* duties" found in FOH subsection 30d00(f)(2), and cites subsection 30d00(f)(3), to suggest that the Guidance conflicts with the regulation's counterman example.  Diss. op. at 72 (emphasis added).  But *unrelated* work does not fall within FOH subsections 30d00(f)(2) and (f)(3) at all. Rather, subsections 30d00(f)(1) and (f)(4) govern unrelated work.

IKUTA, Circuit Judge, joined by CALLAHAN, Circuit Judge, dissenting:

In the guise of interpreting a regulation (that itself is far afield from the statute at issue), the Department of Labor (DOL) created detailed and specific legislation that effectively eliminated an employer's statutory right to take a tip credit. This legislative act was accomplished without compliance with the Administrative Procedure Act (APA) — indeed without any notice to the regulated community at all, resulting in an unfair and unexpected imposition of staggering liability on employers. By deferring to the agency, and thus letting it improperly assume legislative authority, the majority fails in its duty to check the agency's attempt to "exploit ambiguous laws as license for [its] own prerogative." *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1152 (10th Cir. 2016) (Gorsuch, J., concurring). Because the DOL's purported interpretation is no interpretation at all, and the majority's holding to the contrary raises the worst dangers of improper *Seminole Rock* and *Auer* deference, I dissent.[1]

I

In order to understand what the DOL has accomplished by means of its undercover legislative enactment,

---

[1] *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) (holding that the "administrative interpretation" of a regulation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation"); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997) (reaffirming *Seminole Rock*). This principle of deference to agency interpretations is referred to hereafter as "*Auer* deference."

erroneously upheld by the majority as an interpretation of a regulation, it is necessary to understand a bit of historical background.

The Fair Labor Standards Act of 1938 (FLSA) generally requires employers to pay a cash wage of $7.25 per hour to their employees.  29 U.S.C. § 206(a)(1)(c). As originally enacted, the FLSA did not apply to tipped occupations.  In 1966, however, Congress amended the FLSA to extend its coverage to workers employed in the hotel and restaurant industries.  *Or. Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1083 (9th Cir. 2016).  Because the 1966 amendments brought many traditionally tipped employees within the FLSA's protection, Congress designed the amendments "to permit the continuance of existing practices with respect to tips."  S. Rep. No. 89-1487 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 3002, 3014.

Among other changes, the 1966 amendments added § 203(m) and § 203(t).  *See* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 101, 80 Stat. 830, 830.  Section 203(m) allows employers to take a tip credit against the minimum wage requirement for tipped employees. 29 U.S.C. § 203(m).  Section 203(t) states, in full:

> (t) "Tipped employee" means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips.

*Id.* § 203(t).  Read together, §§ 203(m) and (t) allow an employer to take a credit against the minimum wage for employees who are engaged in an occupation in which they are already compensated by tips. *See id.* §§ 203(m), (t). If the tip credit applies, the employee is guaranteed the

minimum wage, but may keep tips above the minimum wage. *Id.* § 203(m).[2]

After Congress amended FLSA to include employees in tipped occupations, the DOL promulgated, via notice and comment, regulations that basically tracked the statute. *See* 32 Fed. Reg. 222-227, § 531.56(a)–(d) (Jan. 10, 1967), currently promulgated at 29 C.F.R. § 531.56(a)–(d). These regulations interpreted § 203 by explaining how to calculate the amount of tips received by the employee. *Id.*

But after circulating these proposed regulations for public comment, and months after the notice-and-comment period ended, the DOL unexpectedly added the "dual jobs" regulation. *See* 32 Fed. Reg. 13,575, 13,580 (Sept. 28, 1967), currently promulgated at 29 C.F.R. § 531.56(e). Unlike the regulations issued for public comment, the dual jobs regulation did not track the statute. Instead, without explanation, the regulation introduced the never-before-seen concept of "dual jobs." *Id.* The regulation states:

> (e) Dual jobs. In some situations an employee is employed in a dual job, as for example,

---

[2] The majority argues that employers "deprive servers the full value of their tips" by "crediting a server's tips towards their obligations to pay full minimum wage for time employees spend working in a non-tipped occupation," and that it is wrong for an employer to use an employee's tips to pay minimum wage for "time an employee spends in a non-tipped occupation." Maj. Op. at 11 n.2. These statements merely assume the majority's conclusion that the statutory term "occupation" refers to minutes spent on tasks that generate tips, rather than referring to a job (such as a waiter, bartender, or short order cook) in which (as set forth in the relevant statute) the employee "customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). There is no dispute that the plaintiffs here held a job in which they received over the threshold amount of tips.

where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

The eleventh-hour addition of § 531.56(e) in the final rule was not the sort of deviation from the proposed rule that is allowed under the APA as a "logical outgrowth of the proposals on which the public had the opportunity to comment." *Hall v. EPA*, 273 F.3d 1146, 1163 (9th Cir. 2001) (quoting *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 421 (D.C. Cir. 1994)). Rather, the proposed regulation never hinted at the idea of dual jobs. *See* 32 Fed. Reg. 222-1227 (Jan 10, 1967); *Envtl. Integrity Project v. EPA.*, 425 F.3d 992, 996 (D.C. Cir. 2005) ("The 'logical

outgrowth' doctrine does not extend to a final rule that finds no roots in the agency's proposal because '[s]omething is not a logical outgrowth of nothing[.]'") (first alteration in original) (quoting *Kooritzky v. Reich*, 17 F.3d 1509, 1513 (D.C. Cir. 1994)).  Instead, § 531.56(e) was the first sign of a slow but certain erosion of the tip credit rule.

In the years following the regulation, the DOL issued several opinion letters addressing the dual jobs regulation. These letters provided case-by-case guidance as to when there is a "clear dividing line" between the types of duties performed by tipped and non-tipped employees such that an employee should be deemed to hold two distinct jobs.[3]

Apparently not satisfied with this case-by-case approach, the DOL decided to give its field investigators more expansive authority to cut back on employers' opportunity

---

[3] U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA–895 (Aug. 8, 1979) (hereinafter, "1979 Letter") (holding that an employee who was required to report to work two hours before doors were opened to the public to prepare vegetables for a salad bar had two occupations, waitress and chef); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter WH–502 (Mar. 28, 1980), *available at* 1980 WL 141336, at \*1 (hereinafter, "1980 Letter") (holding that employees hired as waiters and waitresses, but who were also required to "clean the salad bar, place the condiment crocks in the cooler, clean and stock the waitress station, clean and reset the tables . . . and vacuum the dining room carpet, after the restaurant is closed," were engaged in two different occupations because there was no "clear dividing line between the types of duties performed by a tipped employee, such as between maintenance duties and waitress duties"); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA–854 (Dec. 20, 1985), *available at* 1985 WL 1259240, at \*2–3 (hereinafter, "1985 Letter") (holding that an employee who was hired as a waiter but was assigned to arrive at the restaurant at least two hours before opening to perform general preparatory duties was employed in two different occupations).

to take a tip credit. Therefore, in 1988, the DOL promulgated a new rule in its internal and unpublished Field Operations Handbook (FOH).[4] *See* U.S. Dep't of Labor, Wage & Hour Division, Field Operations Handbook (FOH) 30d00(e) (1988) (hereinafter, "FOH"). This new rule strictly limited an employer's statutory right to take a tip credit by applying a specific numerical cap apparently pulled from thin air. It said: "[W]here the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." *Id.* This 20-percent cap was not made public until decades later, when the DOL included it in an amicus brief filed in the Eighth Circuit in 2010. *See Sec'y of Labor's Amicus Br.*, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725, 10-1726), 2010 WL 3761133.[5]

In 2012, the DOL added a new subsection to its rule (in addition to the 20-percent cap) which further limited the availability of a tip credit. *See* FOH 30d00(f)(4) (2012). The new subsection provided that employers could not take a tip credit for any time employees spent on tasks that did not

---

[4] Ironically, the Field Operations Handbook states it "is not used as a device for establishing interpretive policy." FOH, Foreword, *available at* https://www.dol.gov/whd/FOH/index.htm; *see also Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1012 (9th Cir. 2011) ("[I]t does not appear to us that the FOH is a proper source of interpretive guidance.").

[5] In the amicus brief filed in this appeal, the DOL states that it published the 20-percent cap rule in the 2010 amicus brief. Given the DOL's failure to identify any earlier publication of this rule, the majority's statement that "[i]t is therefore impossible to say" whether the FOH was made public at an earlier date, Maj. Op. at 36 n.17, is disingenuous.

directly relate to serving customers.  *Id.*  As a result, an employer would have to further track employees' time to distinguish between related and unrelated duties.  The additional subsection was not made public until the DOL included it in the amicus brief filed in this very case.  The current version of the DOL's instructions, which will be referred to here as the DOL Time-Tracking Rule (or the Rule), states in full:

> (1) When an individual is employed in a tipped occupation and a non-tipped occupation, for example, as a server and janitor (dual jobs), the tip credit is available only for the hours spent in the tipped occupation, provided such employee customarily and regularly receives more than $30.00 a month in tips.  *See* 29 CFR 531.56(e).

> (2) 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employee and are generally assigned to the tipped employee.  For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.

(3) However, where the facts indicate that tipped employees spend a substantial amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

(4) Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

FOH § 30d00(f) (Dec. 1, 2016).

In a nutshell, rather than interpreting the dual jobs regulation, the DOL Time-Tracking Rule effectively replaces the concept of a tipped occupation with a new regulatory framework. The Rule requires the employer to count the number of minutes the employee spends on: (1) serving customers; (2) performing duties related to serving customers; and (3) performing duties not directly related to serving customers. The Rule then allows an employer to take a tip credit for the minutes an employee spends on tasks in the first category, but not for the tasks in the second category if they take more than 20 percent of the employee's time on the job, and never for tasks in the third category. Clearly, this guidance does not constitute an

interpretation of the dual jobs regulation; it is a completely different approach to the tip credit.

## II

Given the undercover nature of the DOL's approach, we should first consider a threshold question: Is the Time-Tracking Rule actually an *interpretation* of the dual jobs regulation to which *Auer* deference applies?  Or is it a legislative rule, not entitled to such deference?  In failing to address this issue, the majority misses a key element of the necessary analysis.  *See Christensen v. Harris County.*, 529 U.S. 576, 588 (2000) (holding that it is improper to defer to an agency's position if doing so would "permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation").

## A

Under *Seminole Rock*, an agency's interpretation of its own regulation is generally controlling "unless it is plainly erroneous or inconsistent with the regulation."  325 U.S. at 414; *see also Auer,* 519 U.S. at 461.  But by its own terms, this deference applies only when an agency proffers an *interpretation* of its own regulation.  *Id.*  Deferential review under *Auer* is not appropriate "when the disputed administrative action does not represent an actual interpretation of the agency's own regulations."  *Mission Grp. Kansas, Inc. v. Riley*, 146 F.3d 775, 781 (10th Cir. 1998); *see also Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Mangifest*, 826 F.2d 1318, 1324 n.12 (3d Cir. 1987) ("We therefore believe that even in the case of interpretations of regulations, we must distinguish

between a *position* and a reasoned interpretation and defer only to the latter." (emphasis added)).[6]

Courts have made clear that an agency's substantive pronouncements are not entitled to *Auer* deference, even if they purport to be interpretations of a regulation. In *Gonzales v. Oregon*, for instance, the Supreme Court declined to defer to the Attorney General's pronouncement that using controlled substances to assist suicide was not a legitimate medical practice, even though the Attorney General claimed this pronouncement was an "interpretive rule" interpreting a 1971 regulation. 546 U.S. 243, 254–58 (2006). The Court reasoned that the relevant statute did not decide the assisted suicide issue, the 1971 regulation merely restated the statutory language, and "[s]ince the regulation gives no indication how to decide [the assisted suicide] issue, the Attorney General's effort to decide it now cannot be considered an interpretation of the regulation." *Id*. at 257. Because the Attorney General's pronouncement was not an interpretation of the regulation, it was owed no deference.[7] *Id.* at 257–58.

---

[6] Following the decision in *Seminole Rock*, both the Supreme Court, *see Thomas Jefferson*, 512 U.S. at 512; *Auer*, 519 U.S. at 461, and appellate courts, *see Mission Group*, 146 F.3d at 780; *Mangifest*, 826 F.3d at 1323, considered the scope of judicial deference to agency interpretations of their own regulations. The majority's statement that it is "puzzling" for the dissent to rely on pre-*Auer* opinions, Maj. Op. at 28 n.12, ignores the history of the very rule it purports to apply.

[7] The majority attempts to limit *Gonzales* to its facts, arguing that because the DOL's dual jobs regulation does not merely parrot the language of the FLSA, *Gonzales* does not apply. Maj. Op. at 28–29 n.12. But this dismissive approach fails to engage with the Supreme Court's reasoning regarding when an agency's pronouncements are not entitled to deference.

For the same reason, a court may not defer to a substantive rule masquerading as an interpretation even when the rule is consistent in some way with the regulation. "[M]ere linguistic consistency between the rule and the regulations cannot establish that the former is within the interpretive scope of the latter." *Mission Grp.*, 146 F.3d at 781. For instance, where a regulation uses open-ended language (such as a regulation requiring regulated entities to comply with "any additional conditions" specified by the agency), the agency may not subsequently issue a rule imposing substantive conditions on those entities "and claim authorization for that action under the plain terms of" the regulation. *Id.* at 778, 781–82. "Such a practice would make a mockery of *Chevron*, the APA, and judicial review." *Id.* at 782.

The reason for requiring courts to determine, in the first instance, whether an agency's pronouncement is a legitimate interpretation or merely a disguised substantive rule is clear. Under the APA, a substantive rule must be promulgated pursuant to notice-and-comment rulemaking. 5 U.S.C. § 553. Agencies may not make an end-run around this requirement by promulgating an ambiguous regulation, and then, without notice and comment, issuing a substantive rule that purports to resolve the regulation's ambiguities. Such an approach would allow an agency to "bootstrap its way into the equivalent of *Chevron* deference" for its unreviewed position on what a regulation requires. Matthew C. Stephenson & Miri Pogoriler, *Seminole Rock's Domain*, 79 Geo. Wash. L. Rev. 1449, 1464 (2011); *see also Mission Grp.*, 146 F.3d at 782 (warning that absent judicial review, "agencies could simply replace statutory ambiguity with regulatory ambiguity, thus creating *Chevron* deference for any administrative action that might be squeezed within the unrestricted terms of a promulgated regulation"). The mere

fact that an agency has promulgated an ambiguous regulation does not mean that the agency has a blank check to promulgate substantive laws in the guise of interpretation. *Christensen*, 529 U.S. at 588.  Accordingly, a court must differentiate "between a reasoned interpretation of a regulation's language and a mere position about what the regulations require." *Mangifest*, 826 F.2d at 1324.

Instead of giving careful consideration to the significant concerns raised by an agency's promulgation of substantive rules in the guise of interpretation — concerns that have been noted by both the Supreme Court and our sister circuits — the majority asserts it has no obligation to do so because the Court has not enunciated a rule directly on point or created a "mandatory" threshold question. Maj. Op. at 28–29 n.12. But appellate courts do not just excerpt language from Supreme Court decisions and apply it by rote; rather, we must strive to understand the Court's theory and reasoning, and work out how its jurisprudence applies in new contexts. By avoiding that duty here, the majority mistakenly fails to address the threshold question whether the Time-Tracking Rule qualifies as an interpretation.[8]

---

[8] The majority also errs in claiming that the defendants waived this argument.  Maj. Op. at 28–29 n.12, 37 n.19. The defendants argued that the Time-Tracking Rule was invalid because through it the agency created "a new regulation or law" without opportunity for public comment, and thus violated the separation of powers "by making law disguised as an informal commentary," and creating "new causes of action."  This is more than sufficient to raise the issue to the Court, which in any event may "identify and apply the correct legal standard, whether argued by the parties or not." *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013).

B

Because a court must analyze whether an agency is interpreting an existing regulation or creating a new substantive rule in order to determine whether *Auer* deference applies, it is necessary to understand the difference between interpretive and substantive rules.[9]

"[T]he critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015) (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). "[I]nterpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule." *Hemp*, 333 F.3d at 1087. This means that the substance of the interpretive rule "must flow fairly from the substance" of the existing law. *Catholic Health Initiatives v. Sebelius*, 617 F.3d 490, 494 (D.C. Cir. 2010) (quoting Robert A. Anthony, *"Interpretive" Rules, "Legislative" Rules, and "Spurious" Rules: Lifting the Smog*, 8 Admin. L. J. Am. U. 1, 6 n.21 (1994)).

By contrast, legislative rules "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Hemp*, 333 F.3d at 1087. Such a rule has several hallmarks. First, it has the "force of law," meaning that "in the absence of the rule, there would

---

[9] Under the APA, 5 U.S.C. § 553(d)(a), an agency "need not follow the notice and comment procedure to issue an interpretive rule." *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003). But when an agency issues a legislative rule without following the APA procedure, it is invalid, *id.*; *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018), and therefore cannot receive deference under *Auer*, *see Auer*, 519 U.S. at 461; *Christensen*, 529 U.S. at 587–88.

not be an adequate legislative basis for enforcement action." *Id.* (internal quotation marks omitted). Second, a rule is legislative if it does not afford an agency any significant discretion over enforcement. *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1235 (9th Cir. 1999); *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013–14 (9th Cir. 1987). If an agency issues a directive that "establishes a binding norm that so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion, it effectively replaces agency discretion with a new binding rule of substantive law." *Mada-Luna*, 813 F.2d at 1014 (emphasis and internal quotation marks omitted). Another indicator of a legislative rule is that it states a principle "in numerical terms, that cannot be derived from a particular record." *Catholic Health*, 617 F.3d at 495 (internal quotation marks omitted). This is because "[a] rule that turns on a number is likely to be arbitrary" and "[w]hen agencies base rules on arbitrary choices they are legislating." *Id.* (quoting *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 170–71 (7th Cir. 1996) (alteration in original)). For example, a rule requiring that an enclosure for dangerous animals be surrounded by an eight-foot high perimeter fence is legislative when the underlying regulation merely requires structurally sound containment of dangerous animals. *Hoctor*, 82 F.3d at 171.

## C

In deciding whether a rule interprets an existing regulation or creates a new regulation, *Christensen*, 529 U.S. at 587–88, it is necessary to first examine the existing regulation at issue.

1

Here, the underlying dual jobs regulation merely requires employers to discern whether an employee is working in two distinct jobs, based on a common-sense understanding of what it means to have two jobs. The regulation gives one example of a person in a dual job: a maintenance man in a hotel who also serves as a waiter. 29 C.F.R. § 531.56(e). This first example involves jobs that are ordinarily understood to involve different types of duties. While a maintenance man has a range of duties associated with keeping buildings or equipment in good repair, a waiter has a range of duties associated with serving customers at their tables in a restaurant. In common usage, these constitute distinct jobs.

Next, the regulation gives two examples of a person in a single tipped occupation: a waitress who "spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," and a counterman who "as part of a group of countermen, takes a turn as a short order cook for the group." *Id.* The waitress and counterman examples are consistent with the everyday understanding that a job is comprised of a cluster of tasks typically associated with that job. A waitress is engaged in a single job so long as the range of duties she performs is typical for a waitress job (e.g., some cleaning, some food preparation), and a counterman is engaged in a single job so long as his range of duties is typical for that job (e.g., cooking some of his own orders, or taking a turn as a chef) and his fellow countermen share in those duties. *Id.*

As these examples teach, if the employer has hired a person for one job (such as waitress or counterman), but that job includes a range of tasks not necessarily directed towards producing tips, the person is still considered a tipped

employee engaged in a single job so long as the person "customarily and regularly receives at least $30 a month in tips." *Id.*; *cf. Schaefer v. Walker Bros. Enters., Inc.*, 829 F.3d 551, 555 (7th Cir. 2016) ("At some restaurants busboys remove dishes after diners have finished, while at others the servers perform this chore.  So it is not helpful to ask . . . whether cooks or busboys or janitors do one or another task at other restaurants.").

2

There is no reasonable view of the Time-Tracking Rule that permits the conclusion that it is an interpretation of the dual jobs regulation.

First, the Rule does not attempt to explain or derive a general principle from the regulation's example of what constitutes two distinct jobs — a maintenance man and a waiter.  Instead, the Rule effectively disregards this example and takes a different approach, holding that an employee is engaged in dual jobs: (1) if the employee has spent any time at all on tasks not related to obtaining tips; or (2) if the employee has spent time on tasks related to obtaining tips (but not directly serving customers), and this time in the aggregate accounts for 20 percent or more of the hours worked.   Obviously, this description of time spent in different tasks over the course of the day is not a description of distinct jobs.   There is no job that can be described as  more-than-20-percent-of-time-spent-on-untipped-related tasks, nor is there a job that can be described as the five or ten minutes spent here and there on unrelated tasks.

The Rule also effectively disregards the regulation's examples of when an employee is engaged in a single job, despite being involved in a multitude of tasks.  Under the dual jobs regulation, a waitress doing typical waitress duties

remains a waitress, even if (in five-minute increments throughout her workweek) she spends 60 percent of her time waiting tables, 10 percent cleaning tables, 10 percent toasting bread, 10 percent making coffee, and 10 percent washing dishes.  *See* 29 C.F.R. § 531.56(e).  The dual jobs regulation — and common sense — tells us that the waitress is 100 percent engaged in the single tipped occupation of waitressing — she is not 60 percent a waitress, 10 percent a janitor, 10 percent a baker, 10 percent a barrista, and 10 percent a dishwasher.  The Rule holds exactly the opposite: because such a waitress spends more than 20 percent of her time in tasks that are not themselves tipped, she is both engaged in the tipped occupation of waitress and engaged in the untipped occupation of . . . something else?

Similarly, the dual jobs regulation contemplates that an employee who has a job as a counterman, which may include both serving customers at the counter and working as a chef preparing short orders, is engaged in a single tipped occupation.  *See id.*  But because the Rule defines "related duties" to mean duties that "are not by themselves directed toward producing tips" and that meet certain other criteria, FOH § 30d00(f)(2), the time a counterman spends working as a chef preparing short orders (which is not a tip-generating task) is not part of the job of counterman if the cooking duty takes up more than 20 percent of the counterman's time.  *See* FOH § 30d00(f)(3).  In other words, if the counterman spends more than 20 percent of his time preparing short orders, then under the Rule he has two jobs, even though the dual jobs regulation says he has only one.  *See* 29 C.F.R. § 531.56(e).

Despite this clear disjunction between the Rule and the regulation, the majority argues that the Rule must be upheld because the dual jobs regulation is ambiguous, and the Rule

is not "plainly erroneous or inconsistent with the regulation." Maj. Op. at 32 (quoting *Auer*, 519 U.S. at 461). The majority errs, however, because the Rule could qualify as a permissible interpretation of the dual jobs regulation only if the Rule could be fairly derived from the regulation. The majority fails to show how the Rule's specific time-tracking requirements "flow fairly" from the dual jobs regulation, *Catholic Health*, 617 F.3d at 494, rather than being "a mere position about what the regulations require," *Mangifest*, 826 F.2d at 1324.

First, the Rule fails to clarify any of the phrases in the dual job regulation that the majority claims are ambiguous. The majority states that the dual jobs regulation is ambiguous because it "does not offer a precise definition for 'occupation'" and only provides examples. Maj. Op. at 28–29. But the Rule does not clarify this supposed ambiguity. Rather than construe the word "occupation," the Rule uses the undefined term "tipped occupation" and focuses on the time employees spend in specified duties related or unrelated to the "tipped occupation." FOH § 30d00(f)(3)–(4). The Rule's time-tracking framework is obviously not a definition of an "occupation"; at a minimum, the term "occupation" does not mean how often a person performs a task. *See Occupation*, Webster's Third New International Dictionary 1560 (3d ed. 2002) (defining the word to mean a "craft, trade, profession, or other means of earning a living").

Second, the majority states that the dual job regulation is ambiguous because it does not explain what it means by the phrases "part of her time" and "occasionally" in the sentence explaining that a waitress does *not* have a dual job if she "spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses." Maj. Op. at 29–30; 29 C.F.R. § 531.56(e). But the

Rule does not provide guidance on what "part of her time" and "occasionally" mean in this context. Instead the Rule states merely that no tip credit may be taken for "duties related to the tipped occupation of an employee" (without providing any guidance on what constitutes such "related" duties) for those employees who "spend a substantial amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties," and that no tip credit may be taken on work "that is not related to the tipped occupation." FOH § 30d00(f)(2)–(4). These detailed instructions do not "flow fairly," *Catholic Health*, 617 F.3d at 494, from the terms "part of her time" and "occasionally" in the dual jobs regulation.

The majority attempts to camouflage this failure of interpretation by arguing that "an agency need not explicitly identify in its guidance each ambiguous word it is defining in order to provide a valid interpretation of an ambiguous regulation." Maj. Op. at 33 n.16. But this is contrary to the very nature of an interpretation: if the purported interpretation does not address some ambiguity in the regulation, what is the interpretation interpreting? It is not enough for an agency's statement to be consistent with a regulation or express the agency's position about what the regulation requires; rather, it must be a reasoned interpretation of the regulatory language. *Mangifest*, 826 F.2d at 72–74 & n.12.

Finally, the majority points out that the dual jobs regulation states that "related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips," 29 C.F.R. § 531.56(e), but contends that this rule is ambiguous because it does not define the term "related duties." Maj. Op. at 31. But as noted above,

the Rule does not define "related duties" either; it provides no guidance on how closely "related" to customer service a duty must be to constitute a "related duty." *See* FOH § 30d00(f)(3).[10]    Accordingly, the Rule provides no guidance for interpreting the terms the majority identifies as ambiguous in the dual jobs regulation.

The majority not only fails to show that the Rule construes ambiguous terms, it also fails to justify the Rule's time-tracking framework as a fair interpretation of the dual jobs regulation as a whole.  First, the regulation's example of a waitress "who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," 29 C.F.R. § 531.56(e), establishes that an employee is *not* engaged in dual jobs merely because the employee has multiple duties. The Rule flips this determination, holding that an employee *is* engaged in dual jobs when the employee has multiple duties and spends more than 20 percent of the time on related but untipped duties.  FOH § 30d00(f)(3)–(4).  This reversal of the regulation's example finds no support in the language of the regulation.

Similarly, the dual jobs regulation's example of a counterman "who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group" establishes that an employee is *not* engaged in dual jobs merely because the employee takes a turn as a short order cook.  29 C.F.R. § 531.56(e).  The

---

[10] Judge Graber agrees that the Rule's interpretation of "related work" does not warrant deference, and that the dual jobs regulation "plainly forecloses the DOL's interpretation that an employee spending a certain amount of time doing related, but non-tipped, work qualifies as working a dual job."  Graber Conc. Diss. at 50.

regulation goes on to say that "[s]uch related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." *Id.* The Rule again flips this determination, so that a counterman who engages in work as a short order cook *is* engaged in dual jobs if the counterman's work as a short order cook is unrelated to tips (or takes more than 20 percent of his time). FOH § 30d00(f)(3)–(4). As noted above, this reversal of the regulation's example contradicts the regulation because, under the regulation, working as a "short order cook for the group" is part of the single, tipped occupation of a counterman. *See* 29 C.F.R. § 531.56(e). The majority has failed to show how either of the Rule's reversals of the regulation "flow fairly from the substance" of the regulation.[11] *See Catholic Health*, 617 F.3d at 494.

_____

[11] Because the Time-Tracking Rule provides a comprehensive approach to the tip credit, it is unlikely that subsection 4 of the Rule, FOH § 30d00(f)(4), is severable from the rest of the Rule, as Judge Graber suggests. Graber Conc. Diss. at 54–55. But even if subsection 4 is read by itself, it is not entitled to *Auer* deference. Subsection 4 provides:

> Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

This is not an interpretation of the dual jobs regulation because, like subsection (3), subsection (4) adopts a minute-by-minute approach that contradicts the regulation's occupation-based analysis. While the regulation applies only when an employee holds two distinct jobs, such as a maintenance man and a waiter, subsection (4) classifies the minutes

D

Rather than being an interpretation of the dual jobs regulation, the Time-Tracking Rule has all the indicia of a legislative rule. *See supra* at 68–69. Without the Rule and its time-tracking requirements "there would not be an adequate legislative basis for enforcement action," *Hemp*, 333 F.3d at 1087 (internal quotation marks omitted), merely because an employer takes a tip credit when an employee spends time on a range of duties typically included in a tipped occupation. Nor does the Rule give the DOL any discretion in enforcement. *See Barahona-Gomez*, 167 F.3d at 1235. An employer would be subject to liability whenever a minute-by-minute calculation of how employees spend their time during the course of the day shows that, per the Time-Tracking Rule, an employee was not paid minimum wages for minutes spent on related duties exceeding the 20-percent cap or for minutes spent on duties not related to tips.

Further, the DOL's derivation of a 20-percent cap on related duties is precisely the type of arbitrary, numerical choice that should have been made through notice and comment. *Catholic Health*, 617 F.3d at 495; *Hoctor*, 82 F.3d

---

an employee spends on tasks that are "not related to the tipped occupation" as a distinct job, regardless of the nature of the tasks or the amount of time spent performing them. The regulation's assurance that a waitress may perform multiple tasks (including washing dishes or glasses and cleaning tables) and still be employed in a single waitress job, is at odds with subsection (4)'s statement that a server who spends any time washing windows is "effectively employed in dual jobs." Nor does subsection (4) clarify any ambiguous terms in the dual jobs regulation; rather, it adds to the confusion by failing to explain why time spent washing windows, but not time spent washing dishes, is "not related" to the tipped occupation. Because subsection (4) merely presents the agency's position, rather than an interpretation of the regulation, it is not entitled to deference.

at 170–71. The majority argues that the DOL had the authority to establish a 20-percent cap, because it is "consistent with its treatment of other temporal limitations," in regulations it previously promulgated. Maj. Op. at 38. But the majority's examples of the DOL's prior temporal limitations were either legislatively enacted or promulgated through notice-and-comment rulemaking. *See* Maj. Op. at 39 n.20; 29 U.S.C. § 213(c)(6); 29 C.F.R. §§ 552.5, 552.6(b), 786.1, 786.100, 786.150, 786.200. Accordingly, the majority's examples actually compel the opposite conclusion: the DOL recognized that a rule establishing a numerical 20-percent cap is a legislative rule that must be promulgated through the normal rulemaking process.

In short, the Time-Tracking Rule is purely a legislative rule: "under the guise of interpreting a regulation," the DOL has created "de facto a new regulation." *Christensen*, 529 U.S. at 587–88. As such, the Rule is not entitled to *Auer* deference. Moreover, because the DOL did not issue it through notice-and-comment rulemaking, it is invalid.

### III

By mistakenly upholding the DOL's legislative rule as an interpretation that is owed *Auer* deference, the majority runs squarely into the problems that the APA was enacted to prevent.

### A

First, the DOL failed to get necessary input from the regulated public. "[T]he point of notice-and-comment rulemaking is that public comment will be considered by an agency and the agency may alter its action in light of those comments." *Hall*, 273 F.3d at 1163 (9th Cir. 2001). The APA's notice requirement is intended to "improve[] the

quality of agency rulemaking by ensuring that agency regulations will be tested by exposure to diverse public comment." *Small Refiner Lead Phase-Down Task Force v. EPA.*, 705 F.2d 506, 547 (D.C. Cir. 1983) (internal quotations omitted).

Because it never sought or received such input, the DOL promulgated a Rule that not only eviscerates the statutory tip credit, but is unworkable as a practical matter. The facts of this case illustrate why the complexity of the time-tracking requirement makes it unreasonable. Here, Marsh claims that he brewed tea during every opening shift and as needed, which took about ten minutes to complete each time, for a total of forty minutes over the course of any given workweek. He also brewed coffee for each customer who ordered it, which took about five minutes to complete each time, and added up to approximately eighty minutes of any given workweek. Marsh cut, arranged, and stocked lemons and limes during every opening shift and throughout his shifts, each session taking approximately five minutes, for a total of forty minutes in any given workweek. Marsh cleaned the soft drink dispensers and their nozzles, replaced soft drink syrups, and stocked ice. Each task took about five minutes to complete, and over the course of a workweek these tasks respectively took twenty, ten, and forty minutes. J. Alexander's also assigned Marsh cleaning duties, such as wiping tables (five to twenty minutes each time, for a total of one hour and forty minutes over the course of a week), taking out trash (ten minutes each time, for a total of twenty minutes over the course of a week), scrubbing walls when the restaurant was slow (one hour over the course of the week), sweeping floors (about ten minutes each time, for a total of forty minutes over the course of a week), and cleaning restrooms (ten minutes each time, for a total of thirty minutes over the course of a week). Given this

distribution of multiple varied tasks over the course of a day, "nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep the employee under perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts." *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1314 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008).

The majority claims that the Rule is not unworkable in this context, Maj. Op. at 42–44, but each of its arguments fails. First, the majority argues that defendants' concerns are misplaced because "[t]he allegations that would trigger a FLSA wage violation claim require more than de minimis claims based on seconds or minutes spent rolling silverware or sweeping a customer's shattered glass." Maj. Op. at 42–43. But Marsh and the other plaintiffs base their damages claims on exactly these sorts of allegations: minutes spent performing various tasks throughout the work day. And Marsh's claims are exactly the sort addressed by the Rule, which insists that an employer must aggregate all "related duties" as part of "the 20 percent tolerance" and pay minimum wage for all time spent on such duties if over 20 percent, as well as pay minimum wage for all time spent on work "not related to the tipped occupation." FOH § 30d00(f)(3)–(4). *Cf. Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 234 (2014) (rejecting the argument that a de minimis exception applied in a particular FLSA context, such that a court could ignore "a few seconds or minutes of work beyond the scheduled working hours" (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946))).[12]

---

[12] The majority's reliance on *Schaefer*, Maj. Op. at 42–43, as standing for this proposition that the FLSA has a de minimis exception

The majority next argues that it is not impracticable for an employer to keep track of time spent on various duties, because an employee could clock in and out, using different input codes, when engaged in different tasks, such as before and after the restaurant closes or when business is slow. Maj. Op. at 42–43. This assertion is belied by Marsh's claims, which are primarily based on five and ten minute tasks performed throughout his shifts. Contrary to the majority's argument, many of these tasks were not "scheduled," Maj. Op. at 43, but occurred "as needed." The variable nature of such duties further increases the difficulty of tracking Marsh's time spent on each task.

Finally, the majority also claims that the Rule is not impracticable, "because employers are already *required* to maintain records of each hour an employee receives tips and each hour she does not, *see* 29 C.F.R. § 516.28(a)." Maj. Op. at 44. But the cited regulation requires employers to track only the "[h]ours worked each workday in any *occupation* in which the employee does not receive tips," 29 C.F.R. § 516.28(a)(4) (emphasis added), and the "[h]ours worked each workday in *occupations* in which the employee receives tips," 29 C.F.R. § 516.28(a)(5) (emphasis added). Employers do not have to track related duties within a tipped occupation — and certainly not duties as granular as brewing coffee or rolling silverware in napkins. *See id.* Thus the Time-Tracking Rule significantly expands employers' time-tracking obligations.

---

is misplaced. In *Schaefer*, it was undisputed that the servers spent less than 20 percent of their time in related, untipped duties, and the only de minimis exception allowed by the court was for the negligible amount of time (minutes a day) that servers spent dusting picture frames. 829 F.3d at 555.

B

Second, the DOL's creation of a legislative rule without notice and comment — indeed, without any notice at all — imposed an unfair surprise on the regulated community.  The Supreme Court has made clear that an agency cannot "impose potentially massive liability" on the regulated community without giving fair notice and forewarning. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012).

In *Christopher*, the Court considered an action in which pharmaceutical sales representatives sued their employers for overtime wages based on their claim they were not exempt "outside salesmen." *Id.*  While the case was pending before the Supreme Court, the DOL reinterpreted an ambiguous regulation to further support the employees' claims.  *Id.* at 154.   The Court concluded that such interpretation was not entitled to *Auer* deference for several reasons, all of which apply here.  *Id.* at 155–59.

For one, *Christopher* noted that the employees "invoke[d] the DOL's interpretation of ambiguous regulations to impose potentially massive liability on respondent for conduct that occurred well before that interpretation was announced." *Id.* at 155–56; *see also Auer*, 519 U.S. at 461–63.  The same concern applies here.  As noted above, the DOL announced its 20-percent rule in an amicus brief in 2010, and did not announce the full Time-Tracking Rule until this appeal.[13]  While the 2010 version of

---

[13] Therefore, the majority errs in claiming that notice predates the defendants' conduct.  Maj. Op. at 36.  Although the DOL internally revised the Time-Tracking Rule in 2012, it did not publicize the revised

the FOH imposed the 20-percent cap on related work, it was not until 2016 that employers learned they could not take a tip credit for any time — no matter how minimal — an employee spends performing a task "not related to the tipped occupation."[14] § 30d00(f)(4). According to the Rule, any unrelated work (which it still leaves undefined) transforms the employee from a tipped employee to one employed in dual jobs. The unexpected liability such a "surprise switcheroo" can cause is evident here. *See Envtl. Integrity Project*, 425 F.3d at 996 (holding that notice-and-comment requirements prevent agencies from "pull[ing] a surprise switcheroo on regulated entities"). Marsh claims he is entitled to minimum wage for the 17.33 hours he spent each week performing tasks related to serving, and for the 5.5 hours he spent performing unrelated tasks. Multiplying the alleged unpaid wages for these hours over the entire time Marsh was employed, and aggregating the claims of all

---

guidance until it filed its amicus brief in this appeal in 2016 — more than two years after Marsh filed his initial complaint.

[14] The majority contends that the DOL's 1985 opinion letter provides notice to employers that they could not take a tip credit for *any* unrelated work. Maj. Op. at 37 n.18. This is incorrect: the opinion letters articulated a multi-factor test for determining when an employee was engaged in two different occupations. Among other factors, the DOL considered whether there was a "clear dividing line" between two different types of duties, such as when one set of duties was performed in a distinct part of the workday. *See* 1980 Letter (articulating the "clear dividing line" standard); *see also* 1979 Letter (concluding that an employee has dual jobs where the duties unrelated to tip generation were temporally separated from tip-generating duties). In addition, the DOL considered whether an employer assigned a set of distinct duties to a single employee and whether these duties occupied a significant portion of the employee's time. *See* 1985 Letter; 1980 Letter.

similarly situated employees, it is reasonable to assume that large employers will face staggering damages claims.

An analogous concern expressed by *Christopher* is that misplaced *Auer* deference "would seriously undermine the principle that agencies should provide regulated parties fair warning of the conduct [a regulation] prohibits or requires" and "result in precisely the kind of unfair surprise against which our cases have long warned." *Christopher*, 567 U.S. at 156 (alteration in original) (internal quotation marks omitted); *see also Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1035 (9th Cir. 2013) (declining to defer to agency interpretations "where an agency pulls the rug out from under litigants that have relied on a long-established, prior interpretation of a regulation"). In *Christopher*, the fact that "the DOL never initiated any enforcement actions" or "otherwise suggested that it thought the industry was acting unlawfully," highlighted the lack of notice. 567 U.S. at 157.

Again, the same factors apply here. As it has done on many earlier occasions, the DOL issued its Time-Tracking Rule through an unpublished internal manual, and then sought controlling deference via an amicus brief. *See E.I. Du Pont De Nemours & Co. v. Smiley*, No. 16-1189, 2018 WL 3148557, at *1 (U.S. June 28, 2018) (Gorsuch, J., respecting the denial of certiorari) (noting the DOL's "aggressive" attempts to establish policy via amicus briefs in private litigation); Deborah Thompson Eisenberg, *Regulation by Amicus: The Department of Labor's Policy Making in the Courts*, 65 Fla. L. Rev. 1223, 1243–50 (2013) (summarizing the DOL campaign to define the FLSA via interpretations advanced in amicus briefs and the resulting "wild flip-flops in the DOL's position on certain issues during a short period of time"); Stephenson & Pogoriler,

*supra*, at 1493 ("[G]ranting [*Auer*] deference to litigation briefs exacerbates the self-delegation problem by giving the agency even more freedom and incentive to promulgate open-ended rules to be clarified only later[.]"). Moreover, as the district court noted, the DOL has never initiated enforcement litigation based on the 20-percent rule, even though it initially circulated the FOH to investigators in 1988. Like in *Christopher*, there are massive numbers of tipped employees, and "the nature of their work has not materially changed for decades." 567 U.S. at 158. Yet, despite consistent industry practices, the DOL never brought any enforcement action. Where, as here "an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, the potential for unfair surprise is acute." *Id.*

In short, the DOL's failure to engage in notice and comment before issuing the Time-Tracking Rule as its authoritative interpretation of the dual jobs regulation, raises the precise concerns that led the Supreme Court to reject *Auer* deference to stealth DOL rulemaking. *Id.* at 158–59. The majority errs in failing to do likewise.

IV

In recent years, a number of Supreme Court justices have noted grave concerns about the propriety and constitutionality of deferring to agency interpretations. *See, e.g.*, *Perez*, 135 S. Ct. at 1210–11 (Alito, J., concurring in part and concurring in judgment); *id.* at 1211–13 (Scalia, J., concurring in the judgment); *id.* at 1213–25 (Thomas, J., concurring in the judgment); *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 615–16 (2013) (Roberts, C.J., concurring); *Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50, 67–69 (2011) (Scalia, J., concurring). As Justice Scalia observed, "[i]t seems contrary to fundamental principles of separation

of powers to permit the person who promulgates a law to interpret it as well."[15]  *Talk America*, 564 U.S. at 68 (Scalia, J., concurring).

The majority's mistaken willingness to give *Auer* deference to the DOL's legislative rulemaking in the guise of deferring to an "interpretation" highlights these concerns. By taking a hands-off approach to the DOL's arrogation of power, the majority allows the DOL to promulgate what essentially amounts to secret legislation that eliminates the benefit conferred on employers by Congress and then enforce the rule via surprise amicus filings in private litigation — all without political accountability, input from the regulated community via notice and comment, or independent judicial review.  *See Gutierrez-Brizuela*, 834 F.3d at 1152 (Gorsuch, J., concurring) ("[W]hen unchecked by independent courts exercising the job of declaring the law's meaning, executives throughout history [have] sought to exploit ambiguous laws as license for their own prerogative.").  This accumulation of power "subjects regulated parties to precisely the abuses that the Framers sought to prevent," *Perez*, 135 S. Ct. at 1213 (Thomas, J., concurring in the judgment), and raises separation of power concerns, *id.* at 1220–21; *Talk America*, 564 U.S. at 68 (Scalia, J., concurring).

---

[15] It is no help to argue, as Judge Graber does, that "[a]gencies know the purpose of their own regulations."  Graber Conc. Diss. at 49.  The "implied premise of this argument — that what we are looking for is the agency's intent in adopting the rule — is false." *Decker*, 568 U.S. at 618 (Scalia, J., concurring in part and dissenting in part).  Because "[o]nly the text of a regulation goes through the procedures established by Congress for agency rulemaking," it is the text that has "the force and effect of law, not the agency's intent." *Perez*, 135 S. Ct. at 1223–24 (Thomas, J., concurring in the judgment).

Allowing agencies to invent rules without notice "frustrates the notice and predictability purposes of rulemaking, and promotes arbitrary government." *Talk America, Inc.*, 564 U.S. at 69 (Scalia, J., concurring).  Here the DOL did just that, issuing a legislative rule that eviscerates a benefit conferred by Congress and results in a nightmare for the regulated community.  Because there is no basis to defer to the DOL's promulgation of this rule under *Auer* or any other theory, I dissent.